Commonwealth *v.* Swanson, Appellant.

Argued October 3, 1968.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*James R. DiFrancesco,* with him *DiFrancesco & Di-
Francesco,* for appellant.

*Ferdinand F. Bionaz,* District Attorney, for Com-
monwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 12,
1968:
This is an appeal from a Judgment of sentence en-
tered after the Court had denied defendant's motion
for a new trial.

In *December 1966,* defendant was convicted by a jury of first degree murder. The jury then fixed the penalty at life imprisonment.

Ronald Webb, the only witness to the killing, testified for the Commonwealth. Defendant had been involved with Webb and Robert David Herdman, the victim, in several burglaries in or near the city of Johnstown. Webb testified that on *March 10, 1966,* he and the defendant were in the latter's automobile waiting for Herdman to come out of the Utopian Club in Johnstown. When Herdman left the club they followed his car and both cars finally stopped in the Coopersdale area. Defendant and Webb left defendant's automobile and got into Herdman's automobile. Webb got in the front seat on the passenger side and defendant got into the rear seat with Herdman remaining behind the wheel. Defendant accused Herdman of informing the police about certain burglaries, but Herdman denied this and accused Webb of being the informer. Webb said he became drowsy but was wakened by a shot and looked at defendant, who had in his possession a .38 automatic pistol which defendant said he purchased from his father-in-law. Webb testified he saw Herdman's head fall and that defendant then said he was sick of Herdman's lies. Defendant then told Webb to drive the car, which Webb did after pushing the victim's body over to the right side of the front seat. At defendant's direction, Webb drove out Cooper Avenue and along the Cramer Pike. They then turned and started back towards Johnstown, stopped on the berm of the highway, pulled the victim's body out of the automobile and pushed it down over a bank. The following day, defendant telephoned Webb, telling him that he had disposed of the gun. Later, while defendant and Webb were in the Allegheny County Jail, defendant told Webb that he had thrown the gun in the

Windber area on the road to the Peacock Mine and that after this he had asked his mother to locate the gun, which his parents unsuccessfully attempted to do. The Commonwealth produced a State Forester who testified that he saw defendant's parents raking over leaves in that area. Defendant's father-in-law testified that he owned a .38 automatic pistol, that he saw it in his own home a month or two before defendant was arrested, and that he had not given or sold it to defendant, although the latter had offered to buy it.

On *March 17, 1966,* defendant and Webb committed an armed robbery at the St. Michael Branch of the United States National Bank in Johnstown. They were apprehended the same day and later both pleaded guilty.

Defendant's first contention is that the trial Court erred in failing to grant a change of venue, and his second contention is that a new trial should be granted because of after-discovered evidence.

The test for each of these is whether the trial Court committed an abuse of discretion or an error of law which controlled the outcome of the case. *Commonwealth v. Green,* 396 Pa. 137, 142, 151 A. 2d 241.

We shall consider defendant's contentions in their inverse order.

### After-Discovered Evidence

In *Commonwealth v. Schuck,* 401 Pa. 222, 164 A. 2d 13, the Court said (page 229) : "In order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result: Hagopian v. Eskandarian, 396 Pa. 401, 407, 408, 153 A. 2d

897 (1959); Commonwealth v. Clanton, 395 Pa. 521, 526, 151 A. 2d 88 (1959); Commonwealth v. Green, 358 Pa. 192, 199, 56 A. 2d 95 (1948)."

Defendant did not take the witness stand or produce any testimony in his behalf at the trial, with the exception that his wife was a character witness. However, in this petition in which he seeks a new trial on the basis of after-discovered evidence, he relies upon the affidavits of three convicts, which are supplemented by their testimony at the hearing before the lower Court sur this petition. A convict named Craig Selby testified that on or about *August first, 1966,* Webb told him that he had "taken care of Herdman," the victim, and that he had sat behind Herdman in Herdman's car at the time he shot him. *Selby did not mention this to Swanson because he didn't think it was serious and when he did tell Swanson in March of 1967 "he was somewhat amused by it at first."* This was three months after Swanson had been convicted by a jury of murder in the first degree. Hilmer, another inmate of the Federal Penitentiary, testified that in *July 1966,* Webb told him that he had "fixed Herdman for stooling," *but he did not tell Swanson this because "he took it as a joke."* In *May or June of 1967,* Hilmer finally told Swanson of Webb's statement that he, Webb, was the killer. Defendant's third witness was Hobbs, who was in the Allegheny County prison on May 13, 1966, while Swanson and Webb were there. Hobbs testified that while in the Allegheny County prison Webb told him, "I am going to dump him just like I dumped Herdman. I knew he was a first class stooley. I dumped him." In Hobb's affidavit he said, *"I dismissed all this as idle boasting,"* and in his testimony, he testified that he did not know whether Webb was lying, *or boasting or making himself a big shot.* Webb was called by the Commonwealth and testified that he

did not tell Hilmer that he had killed Herdman, and that he did not know Selby, and that he had not shot Herdman, and he never had told anyone that he shot Herdman.

The Opinion of the Court en banc pertinently stated: "At the time of Swanson's trial both the jury and the trial Judge believed that Webb was a truthful witness. The statements and testimony of the three convicts do not change our opinion of Webb's testimony. The testimony of the three convicts was evasive and unconvincing. Their testimony in connection with the testimony produced at the trial would not require a different verdict. Apparently the jury had no difficulty in arriving at a guilty verdict. If the testimony of the three convicts had been added, we think the verdict would have been the same . . . Believing as we do that Webb's testimony at Swanson's trial was essentially truthful, and considering the inherent improbability of the affidavits and testimony of the three convicts, we must deny defendant's motion for a new trial."

We find no abuse of discretion in this analysis and decision.

### Change of Venue

Defendant's other contention is that because of the publicity by the news media in Cambria County involving himself and Webb and the victim (Herdman), the lower Court erred in not granting his motion for a change of venue. Defendant contends that the combination of newspaper articles and television broadcasts created such a prejudicial climate that the jurors were biased prior to trial, as well as at trial, and consequently it was an abuse of discretion not to grant a change of venue.

In *Commonwealth v. Richardson*, 392 Pa. 528, 140 A. 2d 828, the Court pertinently said (pages 540, 541): "It is clearly established that the grant or refusal of a change of venue or of a continuance is within the sound discretion of the trial Court: [Citing seven recent Supreme Court decisions] . . .

"Furthermore, what this Court said in Commonwealth v. Fletcher, 387 Pa. 602, 128 A. 2d 897 (page 611) is appropriate and controlling on the question of prejudice by the jury: 'The language of the Court in Commonwealth v. McGrew, 375 Pa. 518, 525, 100 A. 2d 467, is likewise applicable in the instant case: "The fact that a juror has read or heard about a case and has an impression or an opinion, or a prejudice is not ground for rejection for cause if he testifies and the Court believes that his opinion is not fixed and that he can and will make up his mind solely from the evidence which will be presented at the trial of the case: Com. v. Crossmire, 156 Pa. 304, 308, 27 A. 40; Com. v. Nye, 240 Pa. 359, 370, 87 A. 585; Com. v. Eagan, 190 Pa. 10, 42 A. 374; Com. v. DePalma, 268 Pa. 25, 100 A. 756." ' "

In the light of these authorities, we shall briefly summarize the publicity of which defendant complains. The alleged prejudicial publicity commenced when defendant and Webb were arrested for the armed robbery at the United States National Bank in Johnstown. Subsequent to the bank robbery, thirty newspaper articles and forty-five television newscasts were published in Cambria County. Defendant was referred to as a "punk, arrogant person." The reason for the denial of the change of venue was briefly but well expressed by the trial Judge: "Most of the news coverage was factual and defendant cannot complain that his involvement in such crimes as a bank holdup, to which he had entered a plea of guilty, was referred to by the news media at the time of his subsequent arrest

on the murder charge. The speculation on the part of the television station that the motive of Herdman's murder was revenge was, of course, not factual but merely the expression of someone's opinion. This is the type of comment that might well result in a change of venue but we are unable to find that it has produced such undue excitement or prejudice in this case as to prevent a fair and impartial trial of defendant." We agree that there is no merit in this contention of the defendant.

During the voir dire of the jurors, seventy prospective jurors were questioned about their knowledge of the newspaper articles and the television newscasts. Almost all of the jurors questioned had read or seen on television many of the statements or reports concerning the Herdman murder, and many of the jury panel had expressed opinions as to the guilt or innocence of the defendant prior to trial.

However, it must be remembered that the controlling principle of law is well expressed in *Commonwealth v. Lopinson,* 427 Pa. 284, 298, 234 A. 2d 552, where the Court said: "In one instance the question sought to learn if the proposed juror had formed 'any opinion . . . regarding the statement of any person connected with the case or with regard to any material fact of the case.' The only legitimate inquiry in this area was whether or not the juror had formed a fixed opinion in the case as to the accused's guilt or innocence. See Commonwealth ex rel. Ryan v. Rundle, 411 Pa. 613, 192 A. 2d 362 (1963), cert. denied, 375 U.S. 948 (1963)."

Defendant contends that the testimony of three potential jurors would indicate that they had already formed an opinion concerning defendant's guilt and therefore a new trial should be granted. However, defendant does not mention that two of these three po-

tential jurors were dismissed by the Court when challenged for cause, and that the third juror was dismissed on one of defendant's peremptory challenges.

It will suffice to say (1) that an impartial jury was selected after considering all of defendant's questioning and objections, and (2) none of the jurors selected had a fixed opinion, and (3) these newspaper articles and television broadcasts did not create a prejudicial climate which necessitated a change of venue or prevented a fair trial, and (4) we find no merit in any of defendant's contentions.

Judgment of sentence affirmed.

Mr. Justice JONES concurs in the result.

Mr. Justice MUSMANNO did not participate in the decision of this case.