459 A.2d 318

**COMMONWEALTH of Pennsylvania**

v.

**Vera Mae DREW, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 10, 1983.

Decided April 27, 1983.

586

Neil J. Marcus, Monongahela, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Kemal Alexander Mericli, Dara DeCourcy, Asst. Dist. Attys., Pittsburgh, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

NIX, Justice.

On July 29, 1980 appellant was found guilty of voluntary manslaughter for the shooting death of her husband, Harry Drew. Motions for a new trial and in arrest of judgment were denied and she was sentenced to three to ten years imprisonment. This appeal followed.

Our attention is directed to several assignments of error which appellant contends compel the award of a new trial. Since we find no merit in the issues advanced, we affirm the judgment of sentence.

Initially, appellant contends that the refusal of the trial court to permit her counsel to ask certain questions on voir dire constituted reversible error. During the voir dire examination of the prospective jurors, the court refused to allow defense counsel to propound the following questions:

1. Do you think a battered woman stays with her husband because she enjoys being beaten?

2. Can you put yourself in the position of a 5'1" black woman with limited educational background being attacked by a 5'8" black man?

3. Do you understand or do you believe a woman might justifiably feel she would need to exert more force in repelling an attacker than a man?

4. Do you think a black woman with limited education might be less likely to call the police or an attorney than yourself?

5. Do you believe a man could frighten a woman with serious bodily injury without being armed?

6. Do you believe that a 56 year old black woman is as capable of protecting herself in a fight as you are?

It must be remembered the purpose of the voir dire examination is to provide an opportunity to counsel to assess the qualifications of prospective jurors to serve. *Commonwealth v. Johnson,* 452 Pa. 130, 305 A.2d 5 (1973); *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A.2d 552 (1967), *vacated and remanded* 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344, appeal after remand, 449 Pa. 33, 296 A.2d 524, *cert. denied,* 411 U.S. 986, 93 S.Ct. 2269, 36 L.Ed.2d 963 (1973); *Commonwealth v. McGrew,* 375 Pa. 518, 100 A.2d 467 (1953). It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. *Commonwealth v. Johnson, supra; Commonwealth v. Swanson,* 432 Pa. 293, 248 A.2d 12 (1968), *cert. denied* 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969); *Commonwealth v. Lopinson, supra; Commonwealth v. McGrew, supra.* Thus the inquiry must be directed at ascertaining whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict. *Commonwealth v. Johnson, supra; Commonwealth v. Swanson, supra; Commonwealth v. Lopinson, supra; Commonwealth v. McGrew, supra.* The law also recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs, conceptions and views. The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court.

*Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Johnson, supra.*

As we recognized above, the purpose of the voir dire examination is to disclose qualifications or lack of qualifications of a juror and in particular to determine whether a juror has formed a fixed opinion as to the accused's guilt or innocence. The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula rosa [sic] but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influences of irrelevant factors.

*Commonwealth v. Johnson, supra* 452 Pa. at 136, 305 A.2d at 8.

■ It is equally well established that voir dire is not to be used to attempt to ascertain a prospective juror's present impressions or attitudes.

It is well-settled that "[t]he examination of jurors under voir dire is solely for the purpose of securing a competent, fair, impartial and unprejudiced jury. . . . Neither counsel for the defendant nor for the Commonwealth should be permitted to . . . ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion may be or what his attitude or decision will likely be under certain facts which may be developed in the trial of the case. While considerable latitude should be permitted on a voir dire, *the inquiry should be strictly confined to disclosing qualifications of a juror and whether a juror has formed a fixed opinion or may be otherwise subject to disqualifications for cause."* *Commonwealth v. McGrew,* 375 Pa. 518, 525, 100 A.2d 467, 470 (1953) (emphasis added). *See, Commonwealth v. Biebighauser,* 450 Pa. 336, 346, 300 A.2d 70, 75 (1973); *Commonwealth v. Hoss,* 445 Pa. 98, 107, 283 A.2d 58, 63, 64 (1971); *Commonwealth v.*

*Swanson,* 432 Pa. 293, 299, 248 A.2d 12, 15 (1968); *Commonwealth v. Lopinson,* 427 Pa. 284, 297–98, 234 A.2d 552, 560–61 (1967). The scope of voir dire examination rests in the sound discretion of the trial judge, *see, e.g., Commonwealth v. Biebighauser, supra; Commonwealth v. Lopinson, supra.* [Emphasis in original.]

*Commonwealth v. Johnson, supra* 452 Pa. at 134, 305 A.2d at 7 (1973)

■ The questions sought to be asked by appellant clearly fall within the category of questions seeking to elicit attitudes and possible preconceptions. They do not relate to whether the prospective juror could render a fair and impartial verdict based upon the evidence presented at trial. Thus the rejected questions were irrelevant to the legitimate purposes of voir dire and properly disallowed by the trial court. *Commonwealth v. Johnson, supra; Commonwealth v. Swanson, supra; Commonwealth v. Lopinson, supra; Commonwealth v. McGrew, supra.*

■ Next, appellant argues that the trial court erred in permitting the prosecutor's questions which established that she had been drinking immediately prior to the shooting. Appellant claims that the most crucial issue in this case was establishing her credibility over that of the Commonwealth's only eyewitness, Robin Blair. She argues that the jury might unfairly infer from the questions that the appellant could not recall facts and details as well as Ms. Blair could.

As stated in *McCormick on Evidence,*

Any deficiency of the senses, such as deafness, or color blindness or defect of other senses which would substantially lessen the ability to perceive the facts which the witness purports to have observed, should of course be provable to attack the credibility of the witness, either upon cross-examination or by producing other witnesses to prove the defect. . . .

[Abnormality] . . . is a standard ground of impeachment. One form of abnormality exists when one is under the influence of drugs or drink. If the witness was under

the influence at the time of the happenings which he reports in his testimony or is so at the time he testifies, this condition is provable, on cross [examination] or by extrinsic evidence, to impeach.

McCormick, *Evidence,* § 45 (2d edition, 1972)

■ We have consistently held that intoxication on the part of a witness at the time of an occurrence about which he has testified is a proper matter for the jury's consideration as affecting his credibility. As we stated in *Commonwealth v. Yost,* 478 Pa. 327, 337, 386 A.2d 956, 961 (1978),

"If . . . mental condition at that time had been impaired so as to affect his ability to remember what he saw or heard, evidence as to his condition would be relevant. *Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258 (1974). Such impairment may be shown on the basis of use of drugs or alcohol at such time, but questions on their use at other times are impermissible."

There was considerable conflict as to critical facts between the versions given by Ms. Blair and appellant. Ms. Blair testified that appellant went into the basement to get a gun and stayed down there for twenty (20) minutes. Appellant claims she walked to the other side of the kitchen, opened the basement door, reached in a bag and secured the weapon. Appellant testified that it was only a few seconds between the time her husband put the cord around her neck and when she shot him. The inferences to be drawn from Ms. Blair's testimony suggested a considerably longer period of time elapsing between any confrontation appellant may have had with her husband and the actual shooting.

The testimony suggested that appellant had been drinking and playing cards with friends for approximately seven (7) hours. The record also establishes that the Commonwealth had evidence to be used if the fact of her drinking had been contested by appellant, that her blood alcohol at the time of arrest was .18. It is therefore clear that the jury could appropriately consider the effect of the alcoholic consumption in resolving the conflicts in the testimony between Ms. Blair's testimony and that of appellant.

Additionally, appellant relied on the defense of self defense, thus the reasonableness of her belief of imminent danger was an issue before the jury. The question of the consumption of alcoholic beverages within this time frame would be relevant to the question of whether appellant did in fact have a reasonable belief of an immediate threat to her life. *See, Commonwealth v. White,* 492 Pa. 489, 424 A.2d 1296 (1981); *Commonwealth v. Brown,* 491 Pa. 507, 421 A.2d 660 (1980); *Commonwealth v. Webster,* 490 Pa. 322, 416 A.2d 491 (1980); *Commonwealth v. Gay,* 489 Pa. 17, 413 A.2d 675 (1980); *Commonwealth v. Black,* 474 Pa. 47, 376 A.2d 627 (1977). It is therefore clear that for both of the foregoing reasons the court was correct in permitting this evidence.

■ Finally, appellant claims that the Assistant District Attorney misinformed the jury as to the applicable law in his closing remarks. Appellant asserts as error the trial judge's refusal to make a specific corrective instruction. The Assistant District Attorney said, "In order to find the Defendant, Vera Drew, innocent by reason of self defense, you must find her free from fault." At the conclusion of the prosecution's closing remarks, counsel for the appellant asked for a curative instruction, specifically correcting what had just been said.

A review of the record demonstrates that not only did the court give a general curative instruction but charged as to the elements of self defense. The court refused to repeat the Commonwealth's misstatements in a specific cautionary instruction, believing that emphasizing said statement would create the harm appellant sought to prevent. However, the court did instruct the jury at the conclusion of the charge to disregard counsel's statement of the law. The court warned,

"No statement that was made by either counsel in their closing statement or written on the board is to be taken by you to mean what the law of this matter is. They're allowed to fairly comment on the evidence that was presented and to indicate what their belief of the law to be."

The court specifically stated that no statement by counsel on the law is controlling and in detail outlined the elements of self defense to the jury. This was adequate to offset the prosecution's misstatement.

The Judgment of Sentence is Affirmed.