J-A28010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONTE MCCALLISTER | |
| Appellant | No. 2739 EDA 2013 |

Appeal from the Judgment of Sentence May 23, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0016107-2009

BEFORE:  GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED NOVEMBER 14, 2014**

Appellant, Donte McCallister, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for four (4) counts of robbery and one (1) count each of conspiracy to commit robbery, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and possessing instruments of crime.[1]  We affirm.

In its opinion, the trial court fully sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), (iv), 903, 6106, 6108, and 907, respectively.

Appellant raises the following issues for our review:

> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING THE COMMONWEALTH'S CHALLENGE FOR CAUSE AS TO [JUROR #1]?
>
> WHETHER THE TRIAL COURT ERRED IN VIOLATION OF THE UNITED STATES AND PENNSYLVANIA CONSTITUTIONS BY DENYING APPELLANT'S OBJECTION TO THE COMMONWEALTH'S PEREMPTORY CHALLENGE TO [JUROR #34] ON GROUNDS OF RACIAL DISCRIMINATION PURSUANT TO **BATSON V. KENTUCKY**?[2]

(Appellant's Brief at 2).

In his first issue, Appellant argues Juror #1's conduct and answers to the trial court's questions during *voir dire* in no way demonstrated a likelihood of prejudice, because Juror #1 confirmed she could be a fair and impartial juror despite her belief that the criminal justice system treated her cousin unfairly in a prior case. Appellant asserts nothing in the record or in the trial court's opinion suggests any reason to doubt the credibility of Juror #1. Appellant also disputes the Commonwealth's other justification of its challenge for cause, namely, that Juror #1 had witnessed someone steal her cousin's Buick LeSabre approximately twenty years earlier—the same type of car Appellant and his cohorts used in this case. Appellant claims this fact is meaningless. Appellant concludes the court palpably abused its discretion when it granted the Commonwealth's challenge to Juror #1 for cause. We disagree.

_____

[2] 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

"The decision whether to disqualify a juror is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion." **Commonwealth v. Stevens**, 559 Pa. 171, 197, 739 A.2d 507, 521 (1999). "A challenge for cause to service by a prospective juror should be sustained and that juror excused where that juror demonstrates through his conduct and answers a likelihood of prejudice." **Commonwealth v. Ingber**, 516 Pa. 2, 7, 531 A.2d 1101, 1103 (1987). "The trial court makes that determination based on the prospective juror's answers to questions and demeanor." **Stevens, supra** at 197, 739 A.2d at 521.

> The challenge of a juror for cause is addressed to the trial judge, and much weight must be given to his judgment in passing upon it. In exercising his discretion as to the fitness of a juror to serve, he has the juror before him, and much latitude must be left to him; and the weight to be given to the answers of a juror when examined on his *voir dire* is not to be determined exclusively by his words as we read them in the printed record. They are first to be weighed by the trial judge who sees and hears the juror, and, in the exercise of a wide discretion, may conclude that he is not competent to enter the jury box for the purpose of rendering an impartial verdict, notwithstanding his words to the contrary….

**Commonwealth v. Robinson**, 581 Pa. 154, 204, 864 A.2d 460, 490 (2004), *cert. denied*, 546 U.S. 983, 126 S.Ct. 559, 163 L.Ed.2d 470 (2005) (quoting **Commonwealth v. Sushinskie**, 242 Pa. 406, 413, 89 A. 564, 565 (1913)). "[A] finding regarding a [venireperson's] impartiality 'is based upon determinations of demeanor and credibility that are peculiarly within a

trial judge's province….  The trial judge is of course applying some kind of legal standard to what he sees and hears, but his predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record." ***Commonwealth v. Smith***, 518 Pa. 15, 37, 540 A.2d 246, 256 (1988) (quoting ***Wainwright v. Witt***, 469 U.S. 412, 424-26, 105 S.Ct. 844, 852-53, 83 L.Ed.2d 841, ___ (1985)).  "A juror's bias need not be proven with unmistakable clarity." ***Commonwealth v. Carson***, 590 Pa. 501, 573, 913 A.2d 220, 262 (2006), *cert. denied*, 552 U.S. 954, 128 S.Ct. 384, 169 L.Ed.2d 270 (2007).

Additionally: "[T]he purpose of the *voir dire* examination is to provide an opportunity to counsel to assess the qualifications of prospective jurors to serve." ***Ingber, supra*** at 6, 531 A.2d 1103 (quoting ***Commonwealth v. Drew***, 500 Pa. 585, 588, 459 A.2d 318, 320 (1983)).

> It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification.  Thus the inquiry must be directed at ascertaining whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict.  The law also recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs, conceptions and views.  The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court.

***Ingber, supra*** at 6-7, 531 A.2d 1103 (quoting ***Drew, supra*** at 588, 459 A.2d at 320) (internal citations omitted).

Instantly, Juror #1 indicated on her jury questionnaire that she or

someone close to her had been charged with a crime. The trial court questioned Juror #1 as follows.

[THE COURT]: Can you tell us who that is?

[JUROR #1]: I had a cousin last year.

[THE COURT]: Different cousin?

[JUROR #1]: Yes. And he was, we were in courtroom 805 for a drug charge.

                     \*     \*     \*

[THE COURT]: So you attended the court proceedings?

[JUROR #1]: Yes.

[THE COURT]: Was he convicted?

[JUROR #1]: Yes.

[THE COURT]: Do you feel that he was treated fairly by the system?

[JUROR #1]: No.

[THE COURT]: Do you think the fact that you believe he was not treated fairly, do you think that would interfere with your ability to be fair and impartial?

[JUROR #1]: No.

[THE COURT]: What do you think was not fair about it?

[JUROR #1]: I don't think all the evidence was there and it was a lot of going back and forth and continuances, and it just shows that things were not together.

(**See** N.T. *Voir Dire*, 3/6/13, at 24-25.) Juror #1 also indicated (1) she had a cousin who was murdered in 2005 or 2006; (2) she witnessed someone steal her cousin's Buick LeSabre in 1990; and (3) her father served as both a police officer and a correctional officer. Juror #1 stated that none of these facts would interfere with her ability to be fair and impartial in Appellant's case.

Immediately after the court's examination of Juror #1, the Commonwealth moved to strike Juror #1 for cause for the following reasons:

> Your Honor, challenge for cause for a few reasons. [Juror #1] indicated in her cousin's trial he was treated unfairly. While she does say[] that she can…still be fair with regards to that, we can't take that on face value.
>
> And beyond that, Your Honor, she indicates that part of that problem is the case went back and forth and continuances and was around for a long time. This case has been around since 2009, but she will not know that.
>
> Further, Your Honor, the actual car, if I'm not mistaken, in this case is a Buick LeSabre. So I think that is an issue…in and of itself as far as commonality of the car.

*Id.* at 28.

Juror #1's perception that her cousin was treated unfairly by the criminal justice system in a recent case gave the court reason to believe she would be biased against the Commonwealth. Thus, the record supports the court's decision to grant the Commonwealth's challenge for cause as to Juror #1. **See Stevens, supra**. Although Juror #1 said her cousin's experience would not interfere with her ability to be fair and impartial in Appellant's

case, this statement was not dispositive.[3] *See Robinson, supra*. The court found a likelihood of prejudice based on its direct observation of Juror #1's answers and demeanor. We see no reason to disturb the court's credibility determination. *See Stevens, supra*; *Smith, supra*.

In his second issue, Appellant argues that the court implicitly found Appellant had established a *prima facie* case that the prosecutor had struck Juror #34 on account of race because the court directed the Commonwealth to respond to defense counsel's stated grounds for the *Batson* claim. Appellant asserts the court subsequently failed to evaluate the prosecutor's race-neutral explanation for striking Juror #34 and inconsistently stated Appellant had failed to make out a *prima facie* case of racial discrimination. Appellant contends the court misapplied the three-prong test when it

_____

[3] In its Pa.R.A.P. 1925(a) opinion, the trial court mistakenly stated that Juror #1 said she could not be fair and impartial because of her belief that her cousin received unfair treatment. Nevertheless, Appellant makes no argument that the court misunderstood Juror #1's answer at the time of initial questioning. Moreover, the *voir dire* transcript confirms that when the court made its ruling on the challenge for cause, the court was in fact aware that Juror #1 stated she **could** be fair and impartial. After Juror #1 indicated her cousin's experience would not affect her jury service, the court continued to question her regarding other answers in her questionnaire. At the close of the examination, the court again asked, "Is there any reason why you would not be fair and impartial in this case?" Juror #1 responded, "No." (N.T. *Voir Dire*, 3/6/13, at 27). The court was reminded of Juror #1's affirmation that she would be fair and impartial yet again when the prosecutor stated, "While [Juror #1] does say[] that she can…still be fair with regards to that, we can't take that on face value." *Id.* at 28. The court then granted the challenge "based on [the prosecutor's] argument." *Id.* at 29. Thus, absent more, the court's misstatement in its Rule 1925(a) opinion does not cause us to change our analysis.

evaluated Appellant's **Batson** claim and failed to make the requisite findings of fact and conclusions of law. Appellant further disputes the legitimacy of the prosecutor's stated justification for striking Juror #34, namely, the prosecutor's belief that another venireperson, described as a "South Philadelphia union organizer," would be more sympathetic to the Commonwealth's cause. Appellant suggests this justification is discriminatory because it is based on a belief that a "white labor leader is going to be more favorable to the Commonwealth than an African-American." (Appellant's Brief at 34). Appellant claims the prosecutor had already used peremptory challenges on three other black venirepersons. According to Appellant, the reasons given for two of these strikes were highly questionable, as there was no reason to doubt the ability of these prospective jurors to be fair and impartial. Appellant concludes the trial court improperly rejected his **Batson** claim, and this Court must award a new trial. We disagree.

"An appellate court will reverse a trial court's finding of no discrimination in the jury selection process only if that finding is clearly erroneous." **Commonwealth v. Burns**, 765 A.2d 1144, 1147 (Pa.Super. 2000), *appeal denied*, 566 Pa. 657, 782 A.2d 542 (2001). "The trial judge has before him…the entire venire and is well situated to detect whether a challenge to the seating of one juror is part of a pattern of singling out members of a single race for peremptory challenges." **Commonwealth v.**

*Miller*, 721 A.2d 1121, 1124 (Pa.Super. 1998). "Thus, deference to the trial court's finding on the issue of discriminatory intent makes particular sense because the finding largely will turn on an evaluation of credibility." *Id.*

The United States Supreme Court in **Batson** established a three-part test for evaluating a claim of racial discrimination in the jury selection process. **See Batson, supra**. The rationale of **Batson**, as applied to jury selection/elimination, requires the following under Pennsylvania law:

> To establish…a *prima facie* case, a defendant must show that he is of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact…that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and **any other relevant circumstances** raise an inference that the prosecutor used that practice to exclude venire[persons] for the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

**Commonwealth v. Hill**, 727 A.2d 578, 581-82 (Pa.Super. 1999), *appeal denied*, 561 Pa. 653, 747 A.2d 898 (1999) (citation and internal quotation marks omitted) (emphasis in original).

> Pennsylvania law further requires the defendant, in his…*prima facie* case, to make a record specifically identifying:
>
> 1. the race or gender of all venirepersons in the jury pools;
>
> 2. the race or gender of all venirepersons remaining after challenges for cause;

3. the race or gender of those removed by the prosecutor; and,

4. the race or gender of the jurors who served and the race or gender of jurors acceptable to the Commonwealth who were stricken down by the defense.

*Id.* at 582.  After this record is established, the trial court must consider the totality of the circumstances to determine whether the defendant has made a *prima facie* case of purposeful discrimination.  **Id.**  The striking of a number of individuals belonging to some cognizable group, alone, is not dispositive of a **Batson** violation.  **Id.**

If the trial court determines the defendant has carried his burden, the court then asks the prosecutor to articulate a race-neutral basis for striking the jurors at issue.  **Id.**  The prosecutor's explanations need not be persuasive or even plausible, as long as the explanation is valid on its face. **Miller, supra**.  "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral."  **Id.** at 1123 (quoting **Hernandez v. New York**, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (1991)).  If the prosecutor presents a race-neutral explanation, the trial court must decide whether the defendant has proved purposeful racial discrimination.  **Miller, supra**.

Instantly, defense counsel raised a **Batson** claim when the Commonwealth used its final peremptory challenge on Juror #34.  Defense counsel asserted the Commonwealth had used three consecutive peremptory

challenges (and four out of its last five) on African-Americans. (N.T. *Voir Dire*, 3/7/13, at 81-82). Defense counsel, however, did not provide any additional information regarding the racial composition of the remaining venirepersons, the two other venirepersons struck by the Commonwealth, or those struck by the defense who were acceptable to the Commonwealth. Additionally, Appellant failed to record the racial makeup of the seated jurors. Thus, Appellant failed to make a full and complete record for review of his **Batson** challenge. **See Hill, supra**. **See also Commonwealth v. Fletcher**, 580 Pa. 403, 861 A.2d 898 (2004), *cert. denied*, 547 U.S. 1041, 126 S.Ct. 1617, 164 L.Ed.2d 336 (2006) (refusing to address **Batson** claim where defendant failed to create record identifying race of remaining venirepersons stricken by Commonwealth, jurors acceptable to Commonwealth but stricken by defense, and racial composition of final jury). Because Appellant failed to make the requisite full and complete record of his **Batson** challenge, we cannot properly review the court's decision. **See id.** Thus, Appellant is not entitled to relief on his claim of intentional discrimination in the jury selection process. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/14/2014</u>