J-A17006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BOBBIE JO BUCHHOLZ, GUARDIAN AD LITEM FOR BRADLEY TAYLOR RICHARDS, AN INCAPCITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 1348 WDA 2017 |
| CHARITY IMMEL | : | |

Appeal from the Judgment Entered October 24, 2017
In the Court of Common Pleas of Mercer County
Civil Division at No(s):  2011-4296

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

CONCURRING/DISSENTING MEMORANDUM BY OTT, J.: FILED: April 3, 2019

I agree with the Majority's determination that (1) Bucholz did not waive her issues on appeal, and (2) the trial court properly instructed the jury on both the assured clear distance rule and the sudden emergency doctrine. **See** Majority's Memorandum at 6, 14.  However, I disagree with the Majority's conclusion that the trial court abused its discretion when it permitted Immel to introduce evidence concerning the amount of alcohol Dustin purchased on the date of the accident.  Because I find the court acted within its discretion when it permitted this testimony, I would affirm the judgment in favor of Immel.  Accordingly, I respectfully dissent in part.

A detailed review of the trial court's pretrial and trial rulings on this issue is necessary to my analysis.  As noted above, the trial court granted Buchholz's

pretrial motion *in limine* precluding any testimony "regarding **Bradley Richards**' alcohol consumption, the presence of the stroller at the crash scene or any beer in the stroller[.]" Order, 4/26/2017 (emphasis supplied). However, during Dustin's cross-examination at trial, counsel for Immel asked: "One other thing, sir, that you have not told this jury yet is that you were extremely drunk at the time of this accident; is that correct?" N.T., 5/10/2017, at 69. At that point, the trial court called the attorneys to sidebar. Buchholz's counsel insisted "any reference to alcohol" ran afoul of the order granted the pretrial motion *in limine*. **Id.** at 70. However, Immel's attorney argued the ruling applied only to Bradley's drinking, and not to questions concerning the intoxication of other witnesses. **See id.** The trial court agreed, ruling testimony regarding Dustin's consumption of alcohol was admissible: "Clearly, if he is intoxicated to the point that it affects his memory, that is clearly admissible." **Id.** The court also noted, that when a witness reaches "a certain level" of intoxication, "[c]onsumption of alcohol is admissible to show the misunderstanding of what somebody was seeing because of the consumption." **Id.** at 71.

The trial court then provided the following limiting instruction to the jury:

> Ladies and gentlemen of the jury, this is coming in to establish one thing; that because of the consumption of alcoholic beverages Mr. Dustin Richards' memory is faulty. So you have to determine how intoxicated he was. You can't use it to say, well, he was drunk, he is a bad person. No. It is only as to whether or not his memory of this incident is altered because of the consumption of alcoholic beverages.

*Id.* Counsel for Immel added that the testimony may also be relevant to "show [Dustin's] ability to perceive the events he is describing," to which the court commented, "Well, remember and perceive; you are correct." *Id.* at 71-72.

Thereafter, Immel's attorney began to question Dustin regarding the amount of alcohol he consumed on the day of the accident, which led to questions quantifying the amount of beer he purchased that day. When Dustin disagreed with Immel's characterization that he was "extremely drunk at the time of this accident[,]" defense counsel proceeded to establish the length of time, and amount of beer, he drank that day. *Id.* at 72. Dustin acknowledged he began drinking at 8:00 a.m., and purchased two cases of beer, totaling 60 cans, at 10:00 a.m. *See id.* at 72-74. Dustin also admitted he drank about 22 beers at Turk's house. *See id.* at 74. However, when Immel's attorney began to question him about Turk's consumption, the trial court intervened and instructed Immel to "not bring in" Turk. *Id.* at 75. At sidebar, Buchholz's attorney argued Immel was trying to imply that all of the friends were drinking that afternoon: "[She] is trying to paint a picture that since he bought two 30-packs and now we have questions about chugging, and the implication is there, Judge." *Id.* However, the trial court found Immel's counsel's questioning "ha[d]n't crossed the line" and directed him to rephrase the question so that it focused solely on Dustin's drinking. *Id.* at 75-76.

Immel's attorney continued to question Dustin about his deposition testimony that he had been "chugging beers," as well as the fact that he made

a second "beer run" that afternoon, at which time he purchased two more cases of beer. *Id.* at 76-78. When defense counsel asked him if he was very intoxicated that day, Dustin responded, "I would say that I was intoxicated, but I wouldn't say very intoxicated." *Id.* at 80. Later during trial, Immel's attorney read a portion of Smith's testimony where she was asked if she was intoxicated when she left the creek. *See* N.T., 5/12/2017, at 153. Smith responded: "I was feeling a little buzzed, not too intoxicated but enough sense so that I could know to get out of the road or something if traffic was coming." *Id.* After this testimony, the court again cautioned the jury:

> Ladies and gentleman of the jury, the last portion is given to you so that you can better judge the deposition testimony presented in [Buchholz's] case whether or not [Smith's] consumption of alcohol rendered her ability to perceive and remember what occurred accurately.
>
> Th[ere] is no other purpose; only for her ability to perceive and understand.

*Id.*

With this background in mind, I note that Buchholz concedes (and the Majority agrees) the amount of alcohol Dustin and Smith **consumed** on the day of the accident, as it related to their respective levels of intoxication, "may have been permissible."[1] Buchholz's Brief at 42-43. However, she insists the

---

[1] Indeed, the trial court properly permitted Immel to introduce evidence regarding Dustin and Smith's purported intoxication at the time of the accident. "We have consistently held that intoxication on the part of a witness at the time of an occurrence about which he has testified is a proper matter

"amount of alcohol *purchased* by Dustin Richards on the date of the collision was not relevant to either witnesses' ability to perceive the events to which they testified and was unfairly prejudicial to [Buchholz]." **Id.** at 43 (emphasis in original). Rather, Buchholz insists the sole purpose of this testimony was to allow the jury to "speculate and do the math[,]" that is, to deduce that all four of the friends were drinking heavily prior to the accident. **Id.** Indeed, she maintains:

> This [was] the exact reason that the alcohol in the baby carriage was excluded prior to trial – to prevent the jury [from] thinking that since there was alcohol at the scene, Bradley Richards must have been drinking and could have been intoxicated.
>
> * * * *
>
> By permitting Dustin Richards to testify about the amount of alcohol he purchased on the date of the collision, Immel's counsel effectively subverted Judge Wallace's Order, which precluded asking about or attempting to introduce evidence of any intoxication on the part of Bradley Richards, or the amount of, or presence of, alcohol on the date of the collisions, or the presence of the stroller, which Immel's counsel knew was the method by which the four (4) cases of beer were transported by the group on the date of the collision.

**Id.** at 43, 45.

As the Majority explained, the trial court found the questions regarding the amount of beer purchased were relevant to determine Dustin's level of intoxication, and, consequently, to evaluate his crediblity. **See** Majority

---

for the jury's consideration as affecting his credibility." **Commonwealth v. Drew**, 459 A.2d 318, 321 (Pa. 1983).

- 5 -

Memorandum at 17. However, the Majority quoted only the first part of the court's analysis. Thereafter, the trial court further opined:

> This Court recognized the potential that evidence of the amount of beer purchased by Dustin Richards could prejudice the plaintiff. That is why it gave multiple cautionary instructions. However, the possibility of prejudice was far outweighed by the probative value. Dustin Richards' recollection of how the accident occurred was totally different than [Immel's] recollection. In assessing Dustin Richards' credibility, it was imperative for a jury to know how intoxicated he was. The amount of alcohol purchased that day is a crucial fact in making that assessment.

Trial Court Opinion, 9/6/2017, at 4.

I would find the court did not abuse its discretion. Dustin's level of intoxication was clearly relevant and admissible because his description of the accident differed in great measure from Immel's version. Accordingly, Immel was permitted to argue Dustin's intoxication that night affected his perception of the events as they occurred, as well as his memory of the collision. *See Drew*, *supra*. Furthermore, during cross-examination, Dustin attempted to downplay his level of intoxication, a fact the Majority ignores. *See* N.T., 5/10/2017, at 72 (denying he was "extremely drunk" at the time of the accident); 75 (denying he had been "chugging beers" on the day of the accident); 76 (stating he did not remember if he went on a "second beer run" on the day of the accident); 80 (testifying "I would say that I was intoxicated, but I wouldn't say very intoxicated."). Consequently, the evidence concerning the amount of beer Dustin purchased on the day of the accident was relevant to rebut his testimony he was not "very intoxicated" at the time of the accident. *Id.* at 80. Moreover, both times the trial court permitted testimony

regarding a witness's intoxication, it contemporaneously instructed the jury about the limited admissibility of that testimony. **See** N.T. 5/10/2017, at 71; N.T., 5/12/2017, at 153. "It is well settled that the jury is presumed to follow the court's instructions." **Knowles v. Levan**, 15 A.3d 504, 508 (Pa. Super. 2011).

Lastly, it is significant the jury found **no negligence** on the part of Immel. **See** Verdict, 5/15/2017. Evidence from which the jury could infer Bradley was intoxicated would have been prejudicial if the jury had found Bradley to be contributorily negligent. Here, the jury simply believed Immel's testimony that she did not see Bradley - whom Buchholz's own expert accident reconstructionist believed was walking directly on the roadway - before the collision. **See** N.T., 5/11/2017, at 81.

Accordingly, for the foregoing reasons, I would affirm the judgment in favor of Immel. Therefore, I respectfully concur in part, and dissent in part.