J-S02003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
GQUAN WESLEY   :
  :
Appellant   :   No. 3441 EDA 2019

Appeal from the Judgment of Sentence Entered September 19, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000237-2019

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:      **FILED: APRIL 23, 2021**

Appellant, Gquan Wesley, appeals from the judgment of sentence of 30 to 60 months' imprisonment, followed by 1 year of probation, imposed after a jury convicted him of possession with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia.[1] On appeal, Appellant solely challenges the court's denial of his motion to strike a juror for cause. After careful review, we affirm.

The trial court set forth a detailed summary of the facts and procedural history of Appellant's case, which we need not reproduce herein. **See** Trial

_____

[1] Appellant incorrectly stated, in his notice of appeal, that he is appealing from the order denying his post-sentence motion. "In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted). We have corrected the caption accordingly.

Court Opinion (TCO), 7/23/20, at 1-16. We only briefly note that Appellant's convictions stemmed from evidence that he and a cohort led police on a high-speed chase, which ended when their car crashed. *See id.* at 1-3. Appellant fled on foot but was ultimately apprehended. *Id.* at 3. Drugs were discovered at the site of the vehicle crash, as well as in Appellant's mouth at the police station. *Id.* at 3-4.

Appellant proceeded to a jury trial in July of 2019. At the close thereof, he was convicted of the above-stated offenses. On September 19, 2019, he was sentenced to the aggregate term set forth *supra*. Appellant filed a timely, post-sentence motion, which the court denied on November 6, 2019. He timely appealed and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on July 23, 2020. Herein, Appellant states one issue for our review:

> Whether the trial court erred in denying Appellant's motion to strike for cause Panelist #27, whose conduct and answers demonstrated an inability to deliberate fairly and impartially, especially where the panelist knew a victim or person accused of a similar crime, had close relationships with law enforcement, and was more likely to believe police testimony?

Appellant's Brief at 5.

Before addressing Appellant's specific arguments, we recognize that:

> A criminal defendant's right to an impartial jury is explicitly granted by Article 1, Section 9 of the Pennsylvania Constitution[,] and the Sixth Amendment to the United States Constitution. *See Commonwealth v. Ingber,* … 531 A.2d 1101, 1102 ([Pa.] 1986). The jury selection process is crucial to the preservation of that right. *Id.* The sole purpose of examination

of jurors under *voir dire* is to secure a competent, fair, impartial[,] and unprejudiced jury. ***Commonwealth v. Ellison***, … 902 A.2d 419, 423 ([Pa.] 2006). It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. ***Commonwealth v. Drew***, … 459 A.2d 318, 320 ([Pa.] (1983).

> There are two types of situations in which challenges for cause should be granted: (1) when the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims, or witnesses, that the court will presume the likelihood of prejudice; and (2) when the potential juror's likelihood of prejudice is exhibited by his conduct and answers to questions at *voir dire.* In the former situation, the determination is practically one of law and as such is subject to ordinary review. In the latter situation, much depends upon the answers and demeanor of the potential juror as observed by the trial judge and therefore reversal is appropriate only in case of palpable error.

***Commonwealth v. Colon***, 299 A.2d 326, 327–28 ([Pa. Super.] 1972) (footnotes omitted).

***Commonwealth v. Kelly***, 134 A.3d 59, 61–62 (Pa. Super. 2016).

Here, Appellant avers that the court should have granted his motion to strike Panelist #27 based on the following *voir dire*:

The [c]ourt: Why don't you want to serve as a juror?

[Panelist] #27: I don't have a reason for not serving.

The [c]ourt: Okay. Good. Now you heard my instructions about judging everyone by the same standard?

[Panelist] #27: Yes.

The [c]ourt: A police officer doesn't get any more credibility than anybody else.

[Panelist] #27: You're correct. It's a tough thing. I grew up with police officers my whole life and I have a tough time-

The [c]ourt: And who were they?

[Panelist] #27: Differentiating -- my father, couple cousins, an uncle and I work with police officers everyday….

The [c]ourt: What do you do?

[Panelist] #27: I'm a part time firefighter in Springfield.

The [c]ourt: Okay.  Now, knowing that, can you put that aside, can you listen to the testimony in evidence, apply the law as I give it, judge every witness by the same standard regardless of whether they're a police officer or if it was a civilian testifying. Can you do that and be fair and impartial to these young men?

[Panelist] #27: I probably could.

The [c]ourt: Will you?

[Panelist] #27: Yes.  I can.

The [c]ourt: Anything additional?

[Defense Counsel]: [W]hen you got the form out, you put would you be more likely to believe the testimony of a police officer or any other law enforcement officer because of his or her job. You put yes, right?

[Panelist] #27: I've had so much interaction with police officers my whole life since I've been a baby.  I find … that 99 percent of them are pretty straight shooters.  Like they're telling-

The [c]ourt: But the issue is this, you got to judge everybody by the same standard, not just because they're a police officer in this case[, which] doesn't give them more credibility then if you were testifying.  Do you understand that?

[Panelist] #27: Um-hum.

The [c]ourt: You'll judge everybody by the same standard?

[Panelist] #27: Yes.

The [c]ourt: You can go back out. Thank you.

[Defense Counsel]: Judge, I made a motion for ---

The [c]ourt: Denied.

TCO at 7-8 (quoting, with some corrections, N.T. Trial, 7/24/19, at 71-73). Panelist #27 also answered in the affirmative when asked if any family member or close, personal friend had been the victim of a crime similar to those for which Appellant was on trial, however, no questions were asked about this during his *voir dire*. N.T. Trial, 7/24/19, at 17.

Appellant now claims that Panelist #27's answers to the questions posed during *voir dire* demonstrate that he was biased in favor of law enforcement, and that the court should have stricken him for cause. Given this argument, Appellant is only entitled to reversal if we discern palpable error in the court's decision not to strike the prospective juror. *Kelly*, 134 A.3d at 62. In attempting to convince us that such error occurred, Appellant argues that Panelist #27

> described extensive involvement with law enforcement personnel due to his family history and work as a firefighter. He explained how this would make it extremely difficult for him to judge police and non-police credibility equally. ***His bias in favor of law enforcement in this case was crucial, since every single witness was a police officer.***

Appellant's Brief at 20 (emphasis in original). Appellant also insists that Panelist #27's concession that he "probably" could be fair "did not dispel the force of his prior answers demonstrating bias, nor did it allay concerns about his partiality." *Id.* He contends that, instead, "Panelist #27's conduct, answers, and relationships rendered him incapable of being fair. His purported willingness to be impartial was qualified and came only in response to the court's pressure." *Id.* Finally, Appellant argues that he was prejudiced by the

court's denial of his motion to strike Panelist #27 because he "exhausted all his peremptory challenges in the process of ensuring Panelist #27 did not sit on the final jury." **Id.** at 23; **see Kelly**, 134 A.3d at 62 ("[W]hen a defendant has exhausted his peremptory challenges, the wrongful deprivation of one or more of the number of peremptory challenges provided for by statute or rule of court constitutes reversible error.").

In support of his argument, Appellant relies on three cases, **Commonwealth v. Johnson**, 445 A.2d 509 (Pa. Super. 1982), **Commonwealth v. Kelly**, 134 A.3d 59 (Pa. Super. 2016), and **Commonwealth v. Penn**, 132 A.3d 498 (Pa. Super. 2016). We find each of these decisions distinguishable.

First, in **Johnson**, we held that the trial court should have stricken for cause a prospective juror whose daughter had been the victim of a robbery and rape similar to the robbery and assault for which Johnson was on trial. **Johnson**, 445 A.2d at 512. During *voir dire*, the prospective juror had visibly manifested considerable emotional distress, he expressed substantial doubts about his ability to be impartial at least five times, and he admitted that his lack of emotional control might hinder his ability to follow the court's instructions. **Id.** at 514. After questioning by the court, the prospective juror ultimately testified that he could be fair, but we nevertheless held that this concession did not dispel the strength of his initial admissions, especially where the court's *voir dire* questions potentially "suggest[ed] that [the

prospective juror's] proper response, and the response desired by the court, was to say, despite his doubts, that he would be an impartial juror." *Id.*

Unlike in *Johnson*, Panelist #27 did not have a strong emotional response to any of the *voir dire* questions posed to him. Nothing indicated he was not in control of his emotions or his ability to follow the court's instructions. Furthermore, Appellant only baldly states that the court pressured Panelist #27 to answer a certain way, without any elaboration on this claim. We do not discern any such pressure by the court's questions to the panelist. Thus, *Johnson* does not convince us that the trial court abused its discretion by not striking Panelist #27.

We also find *Kelly* easily distinguishable. There, a prospective juror had been employed as a police officer for 26 years, and he knew several of the police officers listed as potential witnesses in Kelly's case. Additionally, the prospective juror testified that, in his capacity as a police officer, he had filed criminal complaints that were prosecuted by the same District Attorney's Office prosecuting Kelly, and he expected to work with that office in the future. *Kelly*, 134 A.3d at 62. In addition, the prospective juror had worked on previous cases with the same two prosecutors who were representing the Commonwealth in Kelly's action. *Id.* Based on these facts, we concluded that the "ongoing relationship between [the prospective juror] and the … District Attorney's Office, as well as his relationship with the two Assistant District Attorneys prosecuting this case, [was] sufficiently close so as to raise the presumption of prejudice" that arises when an officer has a "real relationship"

to the case. *Id.* at 64 (citing **Commonwealth v. Colon**, 229 A.2d 326, 327 (Pa. Super. 1972) (stating that a challenge for cause should be granted when the potential juror has such a close relationship with, *inter alia*, counsel that the court will presume a likelihood of prejudice); **Commonwealth v. Fletcher**, 369 A.2d 307, 308 (Pa. Super. 1976) (holding that a challenge for cause should have been granted because the prospective juror's situation was "entirely too close" to the case)); **see also Commonwealth v. Jones**, 383 A.2d 874, 876-77 (Pa. 1978) (holding that sitting a juror with a "real relationship" to the case would involve such a probability that prejudice would result that it must be deemed inherently lacking in due process)).

In this case, Appellant does not explain how Panelist #27 had a "real relationship" to this case. The panelist did not have any ties with the District Attorney's Office, or to the prosecutor handling Appellant's trial. He also was not an officer himself, and he did not testify that he knew any of the officers who would be testifying for the Commonwealth. Thus, Appellant has not demonstrated that the facts of this case are analogous with **Kelly**.

Finally, Appellant relies on **Penn**. There, a prospective juror conceded during *voir dire* that she was "pretty steeped in law enforcement[,]" as she was "currently work[ing] as a security officer for a casino; she previously worked in the California University of Pennsylvania Police Department for two years, while she was a student in college; she previously served two years in the United States Marshals' apprenticeship program; she previously completed an internship with the Bethel Park Police Department; and, her

boyfriend [was, at the time of trial,] a police officer in a borough that surrounds the City of Pittsburgh." ***Penn***, 132 A.3d at 505. The prospective juror "unequivocally testified during *voir dire* that she 'would be more likely to believe the testimony of a police officer,' thus indicating that [she] was biased in favor of police and the Commonwealth." ***Id.*** at 504 (citations omitted). In concluding that this prospective juror should have been stricken for cause, we stressed that her "bias in favor of the police rested on a firm bedrock…." ***Id.*** at 505. While we recognized that she had ultimately indicated she could be fair and impartial, she had also immediately thereafter reiterated that, given her experience, she would be inclined to believe the police. ***Id.*** Consequently, we concluded that, as in ***Johnson***, the prospective juror's "eventual assurance to the trial court that she would 'be fair' did not dispel the force of her admissions of bias" and, thus, the court had erred by not striking her for cause. ***Id.*** (cleaned up).

While ***Penn*** is much more analogous to Appellant's case than ***Johnson*** or ***Kelly***, we are still unconvinced that Panelist #27's bias in favor of police ran as deeply as the prospective juror's in ***Penn***. As the Commonwealth observes, in ***Penn***, "it was the potential juror's own established career path and deliberate life choices that were of concern," while here, Panelist #27 had never been a police officer. Commonwealth's Brief at 10. Moreover, while both the prospective juror in ***Penn*** and Panelist #27 indicated on their written forms that they would be more likely to believe a police officer, the answers they provided during the oral *voir dire* differed significantly. For instance,

during the questioning in **Penn**, the prospective juror unequivocally stated at least four times that she would be more inclined to believe policers officers. **See id.** at 500 ("[Q]: You would be more likely to believe the testimony of a police officer?  A: Yes."); **id.** ("[Q]: … [Y]ou would give [officers] credibility, extra credibility simply because they are police.  And there are no right or wrong answers.  Would it be hard for you not to believe them?  A: I feel like I would be more inclined to believe them, yes."); **id.** ("[Q]: … [B]asically[,] the entire Commonwealth case is going to be testimony from police officers. Would it be difficult for you to just not believe them because of your experience?  I mean, you've been a police officer, you've worked with police, you're dating a police officer.  I presume you have a certain attachment to this profession.  A: Correct."); **id.** ("[Q]: … [W]ould you, as you said before, … be inclined to believe them?  A: (Nods head [in the affirmative].)").  The prospective juror in **Penn** only twice indicated that she could be impartial, and qualified that assertion by stating, several times, that that it would "come[] down to the evidence…." **Id.**  The **Penn** panel observed that her "declaration that 'it comes down to the evidence' … did not dispel her admissions of bias, given that [the prospective juror's] admitted view of the evidence was that police officers were entitled to more credibility." **Id.** at 505 n.5.

In contrast, Panelist #27 never explicitly stated, during the oral *voir dire*, that he would find a police officer more credible.  Instead, he explained that he had police officers in his family, he had been around officers his whole life, and he found "99 percent of [officers] are pretty straight shooters…." N.T.

Trial, 7/24/19, at 73. When directly asked if he would "put that aside" and "judge every witness by the same standard, regardless of whether they're a police officer[,]" Panelist #27 twice confirmed that he would. *Id.* at 72, 73. In total, the panelist testified at least four times that he could assess every witness by the same, impartial standard. Moreover, the record does not support Appellant's unexplained assertion that Panelist #27's "willingness to be impartial was qualified…." Appellant's Brief at 20. Therefore, we find *Penn* distinguishable.

In sum, none of the cases on which Appellant relies convince us that the trial court committed a palpable error by denying his motion to strike Panelist #27 for cause. As the trial court stresses, it "was in the best position to assess the credulity and fitness to serve of every potential juror." TCO at 17. The court "explained to each panelist what it meant to be fair and impartial and what it meant to treat everyone testifying by the same standard[,]" and Panelist #27 "agreed [he] could do that." *Id.* We discern no reversible error in the court's accepting the panelist's assurances, and in denying Appellant's motion to strike him for cause.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/21