2016 PA Super 26

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MARLIN KELLY, | : | |
| | : | |
| Appellant | : | No. 367 WDA 2015 |

Appeal from the Judgment of Sentence September 26, 2014
in the Court of Common Pleas of Beaver County,
Criminal Division, No. CP-04-CR-0000133-2013

BEFORE: BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.:                    **FILED FEBRUARY 08, 2016**

Marlin Kelly ("Kelly") appeals the judgment of sentence imposed following his convictions of second-degree murder, second-degree murder of an unborn child, and criminal conspiracy to commit robbery.[1]  We vacate Kelly's judgment of sentence and remand for a new trial.

Kelly and Tyrone Fuller ("Fuller") were involved in the sale of heroin in Ambridge, Pennsylvania.  Kelly and Fuller believed that another Ambridge heroin dealer, Stephen Murray ("Murray"), had stolen heroin from them.  Accordingly, on October 28, 2012, Kelly and Fuller went to Murray's apartment building, with a gun, intending to assault and rob him.  While Kelly and Fuller were in the stairwell outside of the apartment, Kelly shot Murray's girlfriend, Conekia Finney ("Finney"), as she was exiting the apartment.  Finney was seven months pregnant with her daughter, Sekiah.  Both Finney and Sekiah died as a result of Finney's injuries.  Subsequently,

_____

[1] **See** 18 Pa.C.S.A. §§ 2501(a), 2603(a), 903(a)(1).

Kelly and Fuller were arrested and charged with the murder of Finney and her unborn child. Fuller cooperated with the police, and led them to the location of the murder weapon. Fuller also entered into a plea agreement with the Commonwealth, and agreed to testify against Kelly.

The matter was scheduled for trial on August 11, 2014. During *voir dire*, Kelly's counsel requested that certain jurors be excused for cause based on their responses to questions bearing upon their ability to be fair and impartial in their deliberations. Specifically, Kelly's counsel requested that the trial court excuse the following jurors for cause: Juror No. 1 (a police officer, who had worked on prior cases with the two Commonwealth attorneys prosecuting the case, and knew several of the police officers listed as potential witnesses); Juror No. 14 (who had seen media coverage of the case, and indicated that she was concerned that she might not be able to render a verdict solely on the evidence presented due to the use of a firearm and the death of an unborn child); and Juror No. 22 (who had read about the case in the newspaper, and admitted that he had formed an opinion that Kelly was at the crime scene to commit robbery and that he held a preconceived presumption of Kelly's guilt based on the allegations). The trial court refused to excuse these jurors for cause. As a result, Kelly was required to exercise three of his peremptory challenges on these jurors. Kelly exhausted all of his peremptory challenges prior to the empaneling of the jury.

At the conclusion of the trial, the jury found Kelly guilty of the above-mentioned crimes. The trial court sentenced Kelly to life in prison on each of his murder convictions and to eight to twenty years in prison on the conspiracy to commit robbery conviction, with all sentences to run consecutively. Kelly filed a timely post-sentence Motion, which the trial court denied. Kelly filed a timely Notice of Appeal and a court-ordered Concise Statement of Errors complained of on appeal.

On appeal, Kelly raises the following issues for our review:

1. Whether the trial court['s] refusal to excuse for cause potential jurors was a palpable abuse of discretion?

2. Was the jury['s] verdict of guilty against the weight of the evidence presented at trial?

Brief for Appellant at 4 (issues renumbered for ease of disposition).

In his first issue, Kelly contends that the trial court erred by refusing to excuse for cause Juror Nos. 1, 14 and 22, who indicated an inability to be fair and impartial. *Id*. at 21. Kelly asserts that, as a result of the trial court's refusal to excuse these jurors, he was required to exercise his peremptory challenges to exclude them from the jury, and was thereby deprived of those peremptory challenges. *Id*. at 21-22. Kelly argues that, after his peremptory challenges were exhausted, he was forced to accept other individuals as jurors. *Id*. at 22. Kelly asserts that the trial court's refusal to excuse for cause Juror Nos. 1, 14 and 22 deprived him of his

fundamental right to a fair and impartial jury, entitling him to a new trial. *Id*. at 23, 26, 28, 30.

With regard to Juror No. 1, Kelly claims that, because Juror No. 1 was still actively employed as a police officer in Beaver County, he had filed and would continue to file cases handled by the Beaver County District Attorney's Office. *Id*. at 25. Kelly argues that Juror No. 1 had business and situational relationships with the two Beaver County Assistant District Attorneys prosecuting the case, and personally knew several potential law enforcement witnesses. *Id*. at 26. Based on these relationships, Kelly contends that a presumption of prejudice was evident. *Id*.

A criminal defendant's right to an impartial jury is explicitly granted by Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment to the United States Constitution. *See Commonwealth v. Ingber*, 531 A.2d 1101, 1102 (Pa. 1986). The jury selection process is crucial to the preservation of that right. *Id*. The sole purpose of examination of jurors under *voir dire* is to secure a competent, fair, impartial and unprejudiced jury. *Commonwealth v. Ellison*, 902 A.2d 419, 423 (Pa. 2006). It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. *Commonwealth v. Drew*, 459 A.2d 318, 320 (Pa. 1983).

> There are two types of situations in which challenges for cause should be granted: (1) when the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims, or witnesses, that the court will

presume the likelihood of prejudice; and (2) when the potential juror's likelihood of prejudice is exhibited by his conduct and answers to questions at *voir dire*. In the former situation, the determination is practically one of law and as such is subject to ordinary review. In the latter situation, much depends upon the answers and demeanor of the potential juror as observed by the trial judge and therefore reversal is appropriate only in case of palpable error.

**Commonwealth v. Colon**, 209 A.2d 326, 327-28 (1972) (footnotes omitted). Because Kelly asserts, with regard to Juror No. 1, that the trial court should have presumed prejudice to assure fairness, our determination is one of law and is subject to ordinary review, rather than the stricter standard of palpable error. **See id**.

The improper refusal of a challenge for cause is harmless error where the juror is excluded by a peremptory challenge and the defendant does not exhaust his peremptory challenges. **See Ingber**, 531 A.2d at 1104. However, when a defendant has exhausted his peremptory challenges, the wrongful deprivation of one or more of the number of peremptory challenges provided for by statute or rule of court constitutes reversible error. **Id**. at 1105. Thus, because Kelly exhausted his peremptory challenges prior to the empaneling of the jury, we must determine whether the trial court's refusal to excuse Juror No. 1 for cause constitutes reversible error.

Here, during *voir dire*, Juror No. 1 stated that he is a police officer, employed part-time by the Chippewa Township and North Sewickley Police

Departments,[2] and that he knows several of the police officers listed as potential witnesses in the case. N.T., 8/11/14, at 40-42, 47. Juror No. 1 stated that when, in his capacity as a police officer, he files criminal complaints, they are prosecuted by the Beaver County District Attorney's Office, which is the same district attorney's office that prosecuted the instant case. *Id*. at 47. Juror No. 1 stated that he has worked on previous cases with the two Beaver County District Attorneys representing the Commonwealth in this case, and that they have handled cases that he has filed. *Id*. at 40-41. During *voir dire*, Juror No. 1 was questioned further, as follows:

> THE COURT: Is there any other reason – do you have any other fixed opinion as to the guilt or innocence of [Kelly] based upon some reason that you won't listen to the evidence and apply the law?
>
> JUROR NO. 1: Other than being a police officer for the past twenty-six years, sir?
>
> THE COURT: Police officers are fair. The question is, can you be fair?
>
> JUROR NO. 1: Uh, yes, sir.
>
> * * *
>
> [DEFENSE COUNSEL]: You're still working in a part-time capacity [for the] Chippewa [Police Department]? Is that correct?
>
> JUROR NO. 1: Yes, and [for the] North Sewickley [Police Department].

---

[2] Both of these townships are located in Beaver County, Pennsylvania.

[DEFENSE COUNSEL]: So if you were to file a criminal complaint, that criminal case would be prosecuted by [the Beaver County] District Attorney's office? Is that correct?

JUROR NO. 1: That's correct.

[DEFENSE COUNSEL]: And you have in the recent past filed criminal complaints that have been prosecuted by that office?

JUROR NO. 1: Yes.

[DEFENSE COUNSEL]: And if you were going forward, say, a week or a month to file criminal charges, again, it would come to the [Beaver County] District Attorney's office? I don't want to go as far as to say for representation, but you would be working in conjunction with that office in terms of the prosecution of your case?

JUROR NO. 1: That's correct.

*Id*. at 46-47 (some capitalization omitted).

Following this exchange, Kelly's counsel challenged Juror No. 1 for cause, based on (1) his employment as an active police officer engaged in an ongoing relationship with the Beaver County District Attorney's Office prosecuting the case; and (2) his indication that he knows several of the police officers listed as potential witnesses. *Id*. at 49; *see also id*. (wherein Kelly's counsel argued that, if Juror No. 1 is "going to continue to work in law enforcement in [Beaver] County, those cases [that he files] are going to be prosecuted by the same office that is prosecuting this case" and "notwithstanding his representation that …he thinks he can be fair[,] … it creates a conflict of interest."). The trial court denied Kelly's request to

remove Juror No. 1 for cause. *Id*. at 50. Kelly thereafter exercised one of his peremptory challenges to exclude Juror No. 1 from the jury. *Id*. at 51.

A prospective juror's status as a law enforcement officer in and of itself is insufficient to require disqualification as a juror in a criminal case. *Commonwealth v. Jones*, 383 A.2d 874, 876 (Pa. 1978) (plurality).[3] Indeed, the likelihood of bias on the part of police officers, who have no particular relationship to the case or to the police force involved, is not so great that the court must remove the officer from the jury. *Colon*, 299 A.2d at 328 (holding that "an enforcement officer is capable of professional objectivity in considering the case of a defendant accused of a crime against

---

[3] *Jones* involved a first-degree murder case in which the defendant requested that the prospective juror, currently employed as a police officer, be struck for cause. After the trial court denied the request, the defendant used a peremptory challenge to remove the officer from the final jury panel. Six Justices took part in the decision. One Justice filed a concurring opinion, in which another Justice joined. Another Justice concurred in the result, without opinion. The lead opinion quoted with approval the *Colon* Court's holding that one's status as a law enforcement officer in and of itself is insufficient to require disqualification as a juror in a criminal case. The plurality, nonetheless, reasoned that because the proposed juror in that case was a member of the same police department which had officers testifying in the case, and the credibility of the police was essential, that the trial court erred in not disqualifying the juror for cause based on his "real relationship" to the case. *Id*. at 877.

society.").[4]  Absent any "real relationship" to the case, the removal of a law enforcement officer should depend on the sound exercise of discretion by the trial judge.  *Id*.; *see also Jones*, 383 A.2d at 877 (stating that if a police officer does not have a "real relationship" to the case, "he must be viewed in light of the traditional test for qualifications for jurors with the same scope of appellate review.").

However, if a police officer has a "real relationship" to the case, he must automatically be excluded from serving on a criminal jury.  *Jones*, 383 A.2d at 876-77 (holding that sitting a juror with a "real relationship" to the case would involve such a probability that prejudice would result that it must be deemed inherently lacking in due process.).  A "real relationship" has been found to exist between a proposed juror and the case where that juror is a member of the same police force that has officers testifying in the case, and the focus of the defense was on the alleged involuntary nature of the confession, with respect to which the issue of credibility of testifying officers was a critical factor.  *Id*. at 877; *see also Commonwealth v. Fletcher*,

---

[4] *See e.g. Commonwealth v. Hale*, 85 A.3d 570, 578 (Pa. Super. 2014) (holding that the trial court did not err by denying the defendant's motion to strike for cause a prospective juror who was a school police officer, and retired as a sergeant in the special investigations unit of the district attorney's office, where the juror did not indicate that he knew the prosecutor, counsel, the court, or any witnesses involved, and was not a member of the police force involved in the investigation); *Commonwealth v. Lee*, 585 A.2d 1084, 1086 (Pa. Super. 1991) (holding that the trial court did not err by denying the defendant's motion to strike for cause a prospective juror who was a retired police officer, where the police officer had been retired for seventeen years, and the case did not hinge on the credibility of police officers).

369 A.2d 307, 309 (Pa. Super. 1976) (wherein this Court found reversible error when the trial court failed to excuse a juror for cause in a criminal case, involving forcible resistance during arrest and allegations of assault, where the juror was a police officer who was a member of the same police department as the police witnesses, knew three of those witnesses personally, knew the prosecutor trying the matter, and had experienced personal attacks in the performance of his duties).

Here, Juror No. 1 indicated that he has an ongoing relationship with the Beaver County District Attorney's office, which prosecuted this case. Specifically, Juror No. 1 testified that when he files criminal complaints, as he has in the recent past and expects to do so in the near future, the cases are prosecuted by the Beaver County District Attorney's office. N.T., 8/11/14, at 47. Additionally, Juror No. 1 stated that he has worked on prior cases with both of the Beaver County Assistant District Attorneys representing the Commonwealth in this case. *Id*. at 40. Thus, Juror No. 1 has worked closely with the Beaver County District Attorney's Office in the recent past, and expects to do so in the future. *Id*. at 47. Additionally, Juror No. 1 stated that he knew several of the police officers listed as potential law enforcement witnesses in the case. *Id*. at 42.

Based on the foregoing, we conclude that Juror No. 1 had a "real relationship" to the case. The ongoing relationship between Juror No. 1 and the Beaver County District Attorney's Office, as well as his relationship with

the two Assistant District Attorneys prosecuting this case, is sufficiently close so as to raise the presumption of prejudice. **See Colon**, 299 A.2d at 327 (stating that a challenge for cause should be granted when the potential juror has such a close relationship with, *inter alia*, counsel that the court will presume a likelihood of prejudice.); **see also Fletcher**, 369 A.2d at 308 (holding that the challenge for cause should have been granted because the prospective juror's situation was "entirely too close" to the case).

Additionally, although Juror No. 1 is not a member of the same police department as any of the law enforcement witnesses, the Commonwealth's case rested in part on the testimony of ten police officers, several of whom were known to Juror No. 1. **See Colon**, 299 A.2d at 327. Even if this circumstance alone were not sufficient to disqualify Juror No. 1 from sitting on the jury, we conclude that, taken together with the ongoing relationship between Juror No. 1 and the Beaver County District Attorneys prosecuting this case, the likelihood of prejudice on the part of Juror No. 1 must be presumed. **See Fletcher**, 369 A.2d at 309.

As noted above, Kelly exhausted all of his peremptory challenges before the entire jury was empaneled. **See** Trial Court Opinion, 4/21/15, at 20. On this record, therefore, we must conclude that the trial court's failure to sustain a challenge for cause as to Juror No. 1 constitutes reversible

error, requiring a new trial.  **See Jones**, 383 A.2d at 877; **Fletcher**, 369 A.2d at 309.[5]

Given our disposition of this issue, we need not address Kelly's claims regarding juror Nos. 14 and 22, or his second issue.[6]

Judgment of sentence vacated.  Case remanded for a new trial.  Jurisdiction relinquished.

Bender, P.J.E., joins the opinion.

Shogan, J., files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/8/2016

---

[5] Additionally, given the abundance of evidence regarding Kelly's guilt, as well as Juror No. 1's relationship to the Commonwealth attorneys, we find it difficult to understand why the Commonwealth did not acquiesce to Kelly's challenge for cause to Juror No. 1, thereby unnecessarily creating an appealable issue.  **See** N.T., 8/12/14, at 49-51.

[6] Although the erroneous deprivation of Kelly's peremptory challenge to Juror No. 1 is sufficient to warrant a new trial, we are also greatly troubled by the trial court's refusal to excuse Juror No. 14 for cause.  **See** N.T., 8/12/14, at 215-18 (wherein Juror No. 14 stated that she had read about the case in the newspaper and heard about it on television, and when asked whether she could decide the case solely on the evidence, she replied "[h]opefully, yes. I'll try" and "I don't know.  I don't know if I can do that [due to] [t]he death of a baby and I hate guns.").