J-S13032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARLIN KELLY, | : | |
| | : | |
| Appellant | : | No. 1301 WDA 2017 |

Appeal from the Judgment of Sentence April 20, 2017
in the Court of Common Pleas of Beaver County
Criminal Division at No(s):  CP-04-CR-0000133-2013

BEFORE:  GANTMAN, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED MAY 17, 2018**

Marlin Kelly ("Kelly") appeals from the judgment of sentence imposed following his convictions of second-degree murder, second-degree murder of an unborn child, and criminal conspiracy to commit robbery.[1]  We affirm.

Around August 2012, Kelly became involved in a heroin-dealing operation with three other men: Stephen Murray ("Murray"), Murray's brother, Herbert Murray ("Herbert"), and Tyrone Fuller ("Fuller").  In early October 2012, a disagreement among the four divided the group into two enterprises: Kelly with Fuller, and Murray with Herbert.  On October 21, 2012, Murray stole approximately six bricks of heroin that had belonged to Kelly.  After Fuller discovered that Murray had taken the heroin, and was selling it to Fuller and

---

[1] **See** 18 Pa.C.S.A. §§ 2502(b), 2604(b), 903(a)(1).

Kelly's usual customers, Kelly and Fuller formed a plan to retrieve the heroin by robbing Murray at gunpoint.

Kelly and Fuller enlisted the help of James Leo ("Leo"), a heroin addict who frequently provided transportation for Fuller in exchange for heroin. Fuller and Kelly asked Leo to buy heroin from Murray, so that Fuller and Kelly could determine where he lived. In exchange, Fuller and Kelly would provide the buy money and Leo could keep the heroin that he purchased.

Leo agreed to the arrangement and on October 28, 2012, drove Kelly and Fuller to Murray's apartment building. Leo called Murray and arranged to buy the heroin. Kelly and Fuller, both armed with handguns, ascended the exterior stairs of the apartment building, and hid in a shadowy area in the stairwell, waiting to ambush whoever met with Leo.

While Kelly and Fuller were waiting, someone approached their position, causing them to retreat to another floor. Kelly stopped outside of the front door to Murray's apartment. At that moment, Murray's girlfriend, Conekia Finney ("Finney"), opened the door, startling Kelly, and causing him to point his gun into the doorway and pull the trigger. Finney was seven months pregnant with her daughter, Sekiah. After realizing he had shot someone, Kelly fled the scene with Fuller following close behind, unaware of what had happened. Both Finney and Sekiah died as a result of the gunshot wound.

Several days later, Kelly and Fuller were apprehended. Kelly was charged with criminal homicide, criminal homicide of an unborn child, robbery,

and conspiracy to commit robbery. Fuller cooperated with the police, leading them to the murder weapon. Fuller also entered into a plea agreement and agreed to testify against Kelly. Following his first jury trial, Kelly was found guilty of second-degree murder, second-degree murder of an unborn child, and criminal conspiracy to commit robbery. This court reversed the judgment of sentence based on the trial court's failure to sustain a challenge for cause of a juror who, as an active police officer in Beaver County, had an ongoing relationship with the Beaver County District Attorney's office, including the two Assistant District Attorneys prosecuting the case, and knew several of the police officers set to testify in the case. *See Commonwealth v. Kelly*, 134 A.3d 59, 64 (Pa. Super. 2016). This Court remanded for a new trial. *See Id.* at 65.

Following his second jury trial, Kelly was found guilty of second-degree murder, second-degree murder of an unborn child, and conspiracy to commit robbery. Kelly was sentenced to an aggregate term of life in prison. Kelly filed a timely Post-Sentence Motion, challenging the sufficiency and weight of the evidence, which was denied. Kelly filed a timely Notice of Appeal.[2]

On appeal, Kelly raises the following questions for our review:

I. Whether the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that [Kelly] was guilty of [second-degree murder], second[-]degree murder of an

---

[2] The trial court did not order Kelly to file a Pa.R.A.P. 1925 concise statement of matters complained of on appeal. However, the trial court filed a Rule 1925(a) Opinion.

unborn child, and criminal conspiracy – robbery – inflict serious bodily injury?

II. Was the jury verdict of guilty against the weight of the evidence presented at trial?

Brief for Appellant at 4 (capitalization omitted, issues reordered).

In his first claim, Kelly alleges that the evidence was insufficient to support his convictions for second-degree murder, second-degree murder of an unborn child, and conspiracy to commit robbery. *Id.* at 19-21. Kelly asserts that the evidence did not establish that he had conspired with Fuller. *Id.* at 20-21. Kelly argues that there was no evidence that he entered into an agreement with Fuller to rob anyone, nor evidence that he agreed to help or solicited Fuller to rob anyone. *Id.*

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, or part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

"A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502. "Perpetration of a felony" is defined as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery … by force or threat of force…." *Id.* § 2502(d).

"A criminal homicide of an unborn child constitutes second degree murder of an unborn child when it is committed while the defendant was engaged as a principal or an accomplice in the perpetration of a felony." *Id.* § 2604.

Criminal Conspiracy is defined, in relevant part, at section 903 of the Crimes Code:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one of more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime….

*Id.* § 903(a)(1). "The Commonwealth does not have to prove that there was an express agreement to perform the criminal act; rather, a shared understanding that the crime would be committed is sufficient." *Commonwealth v. Nypaver*, 69 A.3d 708, 715 (Pa. Super. 2013).

An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.

*Commonwealth v. McCoy*, 69 A.3d 658, 664 (Pa. Super. 2013) (citations, brackets, and quotation marks omitted).

Fuller testified that he and Kelly had discussed a plan to steal heroin from Murray by threatening him with firearms and bodily injury. *See* N.T., 8/19/14, at 108-16, 120-26. He testified that Kelly was angry about Murray stealing Kelly's heroin and selling it to Fuller and Kelly's customers, and agreed with Fuller to rob Murray. *Id.* at 125. Fuller further testified that the two had discussed using Leo as bait to lure Murray out of his apartment, then ambush him with their guns. *Id.* Fuller stated that he had called Leo to transport them to Murray's apartment, that Kelly and Fuller then armed themselves with firearms, that they dispatched Leo to lure Murray out of his apartment, and hid in waiting outside his apartment, with the intent to ambush Murray. *See id.* at 122-67, 182-83. Fuller testified that Kelly shot Finney. *Id.* at 166.

Leo corroborated Fuller's testimony, testifying that he picked up Kelly and Fuller; was instructed by Fuller, with Kelly present, to show them where Murray lived and to call Murray to make the drug deal; and that Fuller told Leo, in the presence of Kelly, that they were going to "beat" Murray, which

Leo took to mean that they were going to rob him. *See* N.T., 8/15/14, at 35-51, 155-65.

Therefore, the evidence viewed in a light most favorable to the Commonwealth, is sufficient to demonstrate that Kelly was actively engaged in a conspiracy to commit robbery. *See Commonwealth v. Weston*, 749 A.2d 458, 463 (Pa. 2000) (stating that evidence showing that the co-conspirator had an argument with the victim, then solicited the defendant's help to confront the victim, and the defendant and co-conspirator armed themselves, then confronted the victim together, is sufficient to establish shared criminal intent required for criminal conspiracy); *see also Commonwealth v. Lamb*, 455 A.2d 678, 685 (Pa. Super. 1983) (stating that the uncorroborated testimony of a co-conspirator to the defendant's participation in a conspiracy to commit robbery is sufficient evidence to establish criminal conspiracy despite the lack of an oral agreement by the defendant or any particular action by the defendant to aid or solicit the robbery). Further, Kelly shot Finney, in furtherance of a felony, causing her and her unborn child's death, a fact that Kelly does not dispute. *See* Trial Court Opinion, 10/25/17, at 13. Thus, upon our review of the evidence, viewed in a light most favorable to the Commonwealth, we conclude that the evidence was sufficient to sustain Kelly's convictions for second-degree murder, second-degree murder of an unborn child, and conspiracy to commit robbery.

In his second claim, Kelly argues that the verdict was against the weight of the evidence presented at trial. Brief for Appellant at 15-19. Specifically, he claims that it was against the weight of the evidence for the jury to conclude that Kelly was a participant in the underlying conspiracy to commit robbery, and as a result, it was also against the weight of the evidence to find him guilty of second-degree murder and second-degree murder of an unborn child. *Id.* He argues that Fuller planned the robbery on his own, and Kelly followed along, completely unaware of Fuller's intentions. *Id.* at 17-19.

> The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted).

Here, the trial court found that the verdict, based upon the substantial evidence found credible by the jury, did not shock one's conscience. *See* Trial Court Opinion, 10/25/17, at 17-18. Based upon our review, we conclude that

the trial court did not abuse its discretion in denying Kelly's weight of the evidence claim. *See Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (stating that "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2018