J-S08012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JABREE ROBERTSON | : | |
| | : | |
| Appellant | : | No. 274 EDA 2025 |

Appeal from the Judgment of Sentence Entered July 22, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004017-2021

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JUNE 9, 2026**

Jabree Robertson appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County following his conviction of first-degree murder, attempted murder, conspiracy, carrying a firearm without a license, and possession of an instrument of crime at a jury trial.[1] On appeal, Robertson challenges the trial court's refusal to strike a juror for cause, evidentiary ruling, and denial of his motion to dismiss pursuant to Pa.R.Crim.P. 600. After careful review, we affirm.

A detailed recitation of the facts underlying Robertson's convictions is unnecessary given our disposition. Briefly, on May 17, 2024, Robertson was convicted of the above offenses based upon his role in a shooting that occurred

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 901(a), 903, 6106(a)(1), and 907(a), respectively.

on February 22, 2020 in Chester and resulted in the death of Randy Maltby.

On July 22, 2024, the court imposed an aggregate sentence of life without the

possibility of parole followed by 40 to 80 years' incarceration. Robertson timely

filed post-sentence motions, which the court denied on January 7, 2025,

following a hearing. On January 13, 2025, Robertson filed a notice of appeal.

Both Robertson and the trial court have complied with Rule 1925. **See**

Pa.R.A.P. 1925(a), (b).

On appeal, Robertson raises the following questions for our review:

1. [During jury selection, Juror #54] identified herself as the daughter of a former Delaware County Assistant District Attorney and now practicing as an Assistant United States Attorney for the Eastern District of Pennsylvania. [Juror #54's] stepfather is currently employed by the Delaware County District Attorney's Office in the Criminal Investigation Division [("CID")]. Did the learned trial court err when it did not sustain defense counsel's motion to strike [Juror #54] for cause and this required defense counsel to use one of his peremptory challenges to strike [Juror #54] from serving on the jury panel[?]

2. Did the learned trial court err in sustaining the Commonwealth's objection to cross examination of Commonwealth witness Damar Macklin?

3. Did the learned trial court abuse its discretion and err by denying [Robertson's] Rule 600 Motion to dismiss?

Appellant's Brief, at 1-2 (formatting altered; trial court and suggested answers

omitted).[2]

_____

[2] We note with extreme displeasure the Commonwealth's failure to file an appellee's brief in this first-degree murder case. "An appellee is required to file a brief that at minimum must contain 'a summary of argument and the
*(Footnote Continued Next Page)*

In his first issue, Robertson challenges the trial court's denial of defense counsel's motion to strike Juror #54 for cause. "The Sixth and Fourteenth Amendments guarantee a defendant the right to, *inter alia*, an impartial jury[.] Thus, the jury selection process is crucial to the preservation of a criminal defendant's constitutional right to an impartial jury." **Commonwealth v. Davis**, 273 A.3d 1228, 1240 (Pa. Super. 2022) (internal quotation marks and citations omitted).

> *Voir dire* plays a critical function in assuring the criminal defendant that his right to an impartial jury will be honored. Without an adequate *voir dire*, the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled.

*Id.* (citation omitted). A trial court must grant a challenge to remove a juror for cause if the prospective juror: (1) "has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses" that prejudice is presumed; or (2) "demonstrates a likelihood of prejudice by his or her conduct and answers to questions." **Shinal v. Toms**, 162 A.3d 429, 440 (Pa. 2017) (internal quotation marks and citations omitted). Robertson avers that striking Juror #54 for cause was warranted based upon the former scenario, where Juror #54's "familial connections" to the Delaware County

---

complete argument for appellee.'" **Commonwealth v. Pappas**, 845 A.2d 829, 835 (Pa. Super. 2004) (quoting Pa.R.A.P. 2112). In **Pappas**, the panel referred to the Commonwealth's failure to file a proper appellee's brief as "unacceptable." **Id.** We echo that opinion and remind the Commonwealth of its obligation to file an appellee's brief in future appeals.

District Attorney's office were "inherently prejudicial[.]" Appellant's Brief, at 7.

Robertson's claim is based upon the following exchange that ensued when the court called Juror #54 for individual questioning:

The Court: You stood for one of my questions, which is either you or someone close to you works in a law related field.

Juror #54: Yeah my mom is an Assistant US Attorney, and my stepdad is a sergeant.

The Court: Police sergeant.

Juror #54: Yeah.

The Court: All right. And your mom, that's the Assistant US Attorney. Did she handle criminal cases as well as civil cases?

Juror #54: I believe just criminal.

The Court: Okay. All right. And you understand that if you were selected as a juror, I would instruct ... you wouldn't be [permitted] to discuss this case with anyone including your ... US Attorney[] mother nor your stepfather who is a police sergeant?

Juror #54: Mm-Hmm.

The Court: And you'd be able to follow my instructions?

Juror #54: Yeah.

The Court: All right. Would anything you've just told me affect your ability to be fair and impartial in this case?

Juror #54: No, I don't believe so.

The Court: Can you make your decision solely on the evidence in this case?

| Juror #54: | Mm-Hmm. |
|---|---|

The Court:            Is there any doubt in your mind about your ability to [be] both [fair] and impartial?

Juror #54:            No.

The Court:            Questions for [Juror #54].

[Prosecution]:            I don't have any questions for you[.]

[Defense Counsel]:     Ma'am, do you know what kind of cases your mom handles? Like all, all types of crimes[?]

Juror #54:            Usually child sex cases and then sometimes like drug-related crimes.

[Defense Counsel]:     Okay. Where does she work?

Juror #54:            In Philadelphia.

[Defense Counsel]:     Okay. And where is your dad a police sergeant?

Juror #54:            He works for [the Internet Crimes Against Children ("ICAC") task force] I think it's Delaware County, so I don't know if it's the District Attorney's office, but Delaware County[.] I don't know much about it.

[Defense Counsel]:     CID. Is it criminal?

Juror #54:            I think so, yeah.

[Defense Counsel]:     So your dad currently works for the DA's office here in the courthouse?

Juror #54:            I guess it is the DA's office.

N.T. Trial, 5/13/24, at 208-210 (unnecessary capitalization omitted). Defense counsel then confirmed the names of Juror #54's mother and stepfather, and the prosecution confirmed that her stepfather was "not on the [witness] list."

*Id.* at 210. When the court released Juror #54, the following exchange

ensued:

> [Defense Counsel]: I would make the motion to strike for cause just because [Juror #54's stepfather] works in CID.
>
> The Court: Does he work in CID?
>
> [Prosecution]: Yeah, but I mean, she was pretty clear and he's not on the list. Not even mentioned. [He] wasn't involved in this case.
>
> * * *
>
> The Court: [W]hat else did you want to tell me about [Juror #54]?
>
> [Prosecution]: So Judge I mean, candidly counsel is essentially asking to strike her because her stepfather works in... Sorry you know, he's not involved in the case. The ICAC is essentially like child pornography and sex crimes. She struggled to really even say where he worked. Her mother doesn't do anything. She said I believe drug crimes and something else. I don't think there's any reason when she was pretty, pretty clear she could be fair and impartial, she didn't stand up for more likely to believe a police officer or less likely. So I don't think there's any actual valid reason for a ... strike for [] cause[.]
>
> The Court: Anything further[?]
>
> [Defense Counsel]: Just, I mean, her mother was a former Delaware County District Attorney for many years then, then she's been a prosecutor in the US Attorney's office for a long time. I could tell as an officer of the court, I could tell the court that she had a lot of connections to the District Attorney's office[,] and her father was currently an employee of the [] CID division you know, it's a CID detective who's an advocate in this case. And obviously, it's a different section, but they are coworkers, friends. I just think it's inherent.
>
> [Prosecution]: And Judge that's what [peremptory strikes are for]. That's not cause [for] anything that was provided by her answers.

- 6 -

The Court:          All right. I'm going to deny your motion. You have an exception.

*Id.* at 210, 212-213 (unnecessary capitalization omitted). Defense counsel then used his first peremptory strike to exclude Juror #54 from the jury panel and proceeded to exhaust his remaining peremptory challenges throughout jury selection.

Robertson avers that Juror #54's stepfather's employment in law enforcement, "[c]oupled with her mother's long ties to the very office that is prosecuting the case," created "inherent bias" in Juror #54. Appellant's Brief, at 10. Robertson concludes that, in light of Juror #54's familial relationships, "she could not be expected to be fair and impartial[,]" and the trial court committed reversible error by forcing defense counsel "to use one of his peremptory strikes to remove [Juror #54] from the panel." *Id.* at 7, 10. We disagree.

As our Supreme Court has explained:

The presumption of prejudice arises when a juror has a close familial, financial, or situational relationship with a participant in the litigation (*i.e.*, the parties, counsel, victims, or witnesses). The mere existence of some familial, financial, or situational relationship does not require dismissal in every case. A remote relationship to an involved party is not a basis for disqualification where a prospective juror indicates during *voir dire* that he or she will not be prejudiced.

*Shinal*, 162 A.3d at 443 (citations and quotation marks omitted). "In assessing the trial court's acceptance of the juror's answers, [appellate courts] apply a deferential standard of review and will reverse the trial court upon a

- 7 -

palpable abuse of discretion." ***Id.*** at 448 (citation omitted). However, the determination as to whether a prospective juror's relationship to a participant in the litigation is close enough to warrant a presumption of prejudice presents a question of law, for which our standard of review is *de novo*, and our scope of review is plenary. ***See Commonwealth v. Dula***, 262 A.3d 609, 625-26 (Pa. Super. 2021).

> The trial court addressed Robertson's challenge as follows:
>
> Juror [#]54 did not have a close familial, financial, or situational relationship with the parties, counsel, victims, or witnesses from which [the] court could presume a likelihood of prejudice. The juror's mother is a prosecutor, but she no longer works in Delaware County and was not involved in this case. [***See*** N.T. Trial, 5/13/24, at 209-10]. While the juror's stepfather works in the Delaware County District Attorney's [CID], he also was not involved in this case and works in a separate department of the CID. [***See id.*** at 210]. Thus, without a direct connection to anyone involved in this case, Juror [#]54's relationship to this case was equally as remote as jurors' relationships in other court decisions that did not find grounds to strike for cause. Courts do not presume a likelihood of prejudice simply from a prospective juror's family members working in law enforcement. Additionally, Juror [#]54 plainly stated she could be fair and impartial. Therefore, [the] court was properly within its discretion in finding no likelihood of prejudice from Juror [#]54's family connections to law enforcement.
>
> [The] court did not err in denying trial counsel's motion to strike Juror [#]54 for cause. Juror [#]54 unambiguously affirmed that she could be fair and impartial, follow instructions, and decide based on the evidence, and she had only a remote relationship to the law enforcement in this case. Therefore, [the] court properly found within its discretion that no likelihood of prejudice to [Robertson] would result from refusing to remove Juror [#]54 for cause.

Trial Court Opinion, 8/12/25, at 14-15 (unnecessary capitalization omitted).

We discern no error of law nor abuse of discretion in the trial court's denial of Robertson's motion to strike Juror #54 for cause. Juror #54 did not have a close relationship with a participant in the case that would warrant applying a presumption of prejudice or demonstrate a likelihood of prejudice through her conduct and answers to questions. **Shinal**, 162 A.3d at 443. To this end, we find this Court's decision in **Commonwealth v. Wesley**, 253 A.3d 310, 2021 WL 1593005 at *1 (Pa. Super. filed Apr. 23, 2021) (unpublished memorandum), persuasive.

The appellant in **Wesley** claimed that the trial court erred in denying his motion to strike a prospective juror for cause based on both the juror's conduct and answers during voir dire and his "extensive involvement with law enforcement personnel due to his family history and work as a firefighter." **Id.** at *3 (citation omitted). The panel determined that a presumption of prejudice was not warranted where the appellant failed to explain how the prospective juror had a "real relationship" to the case. **Id.** at *4. Specifically, the panel explained that the prospective juror was not a police officer himself, did not indicate that he knew any of the officers testifying for the Commonwealth, and did not have any ties to the District Attorney's office generally or to the specific prosecutor handling the trial. **See id.** at *3-4 (distinguishing **Commonwealth v. Kelly**, 134 A.3d 59, 64 (Pa. Super. 2016) (concluding prospective police officer juror who knew several police officers listed as potential witnesses, with ongoing relationship with the prosecuting District Attorney's office, and close

relationship with the prosecuting attorneys had "real relationship" to the case sufficiently close to presume prejudice)). The panel further determined that the prospective juror's conduct did not warrant striking him for cause where he "did not have a strong emotional response to any of the *voir dire* questions posed to him" and "[n]othing indicated he was not in control of his emotions or his ability to follow the court's instructions." *Id.* at *3 (distinguishing ***Commonwealth v. Johnson***, 445 A.2d 509, 512 (Pa. Super. 1982) (concluding that trial court should have stricken prospective juror for cause because her daughter had been victim of crimes similar to the ones for which defendant was on trial)). Finally, the panel rejected the appellant's contention that the prospective juror's answers warranted dismissal for cause where he indicated "that he could assess every witness by the same, impartial standard." *Id.* at *4-5 (distinguishing ***Commonwealth v. Penn***, 132 A.3d 498, 504-05 (Pa. Super. 2016) (concluding prospective juror who was "steeped in law enforcement" and said she would be more likely to believe the testimony of a police officer should have been stricken for cause)).

Likewise, in the case *sub judice*, Robertson has failed to explain how Juror #54 had a real relationship to his case where she did not indicate that she worked in law enforcement or that she knew the prosecutor representing the Commonwealth or any of the Commonwealth's witnesses. *See* N.T. Trial, 5/13/24, at 27, 29-30. At most, Juror #54 had an attenuated relationship to Delaware County law enforcement generally based upon her stepfather's

present employment and her mother's former employment as a prosecutor with the Delaware County District Attorney's office. However, we find no indication that either Juror #54, her mother, or stepfather had any connection or relationship to Robertson's case. **See Kelly**, 134 A.3d at 63.[3] Accordingly, Juror #54's familial relationships are not sufficiently close to warrant a presumption of prejudice.

Moreover, the trial court questioned Juror #54 on her familial relationships and determined that she did not present a likelihood of prejudice or bias in favor of law enforcement based upon her conduct and responses. **See Shinal**, 162 A.3d at 448. Our review of the record confirms that during group *voir dire*, Juror #54 indicated that either she, an immediate family member, or a very close friend had been employed in the field of law enforcement or the practice of criminal law. **See** N.T. Trial, 5/13/24, at 30. However, she further indicated she believed that she could be a fair and impartial juror. **See id.** at 31. Juror #54 did not indicate that she would tend

---

[3] Based on Juror #54's responses, it is not clear whether her stepfather is employed as a sergeant within the Delaware County Police Department or as a member of the ICAC task force within the CID of the Delaware County District Attorney's office. **See** N.T. Trial, 5/13/24, at 208 (confirming stepfather's employment as police sergeant); **but see id.** at 210 (indicating stepfather works for ICAC task force). However, we note that both Robertson and the trial court refer to him as a CID employee, and as previously mentioned, the Commonwealth did not file a brief in the matter. **See** Appellant's Brief, at 3, 7-8; Trial Court Opinion, 8/12/25, at 14. Ultimately, this distinction is immaterial, as in either scenario, there is no indication in the record before us that Juror #54's stepfather was involved in the prosecution of Robertson's case.

to believe or disbelieve a witness's testimony merely because the witness was a police officer, that the nature of the charges against Robertson would prevent her from serving as a fair and impartial juror, or that she would be unable to accept or follow the court's instructions. *See id.* at 31-32, 33, 34. Furthermore, during individual questioning, Juror #54 indicated that she would be able to be fair and impartial and make a decision based solely on the evidence presented. *See id.* at 209. Thus, the trial court's determination that Juror #54 did not present a likelihood of prejudice is supported by the record, and we discern no palpable error. *Shinal*, 162 A.3d at 448. Accordingly, Robertson's first issue does not merit relief.

In his second issue, Robertson challenges the trial court's evidentiary ruling. Specifically, Robertson avers that the trial court erred in sustaining the Commonwealth's objection to defense counsel's attempt to impeach Damar Macklin, a cooperating witness and shooting victim, on cross-examination. *See* Appellant's Brief, at 11-13.

Robertson has waived this issue for our review. In his 1925(b) statement, the only claim Robertson raised concerning an alleged error by the trial court in limiting cross-examination of a witness involved "cooperating witness Darrin Shelton[.]" 1925(b) Statement, 2/13/25, at ¶ 4; *see* Amended 1925(b) Statement, 7/23/25. It is well-settled that "[a]ny issues not raised in a 1925(b) statement will be deemed waived." *Commonwealth v. Rice*, 331 A.3d 5, 11 (Pa. Super. 2025) (citation omitted); *see* Pa.R.A.P. 1925(b)(4)(ii)

(requiring an appellant's 1925(b) statement to "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge"). Therefore, Robertson's failure to raise an alleged error by the trial court in limiting the cross-examination of Damar Macklin in his 1925(b) statement results in waiver of the issue on appeal. **See Rice**, 331 A.3d at 11. Accordingly, Robertson's second issue does not merit relief.

In his third issue, Robertson challenges the trial court's denial of his Rule 600 motion, filed on December 27, 2023, following an evidentiary hearing.[4]

> We review a trial court's Rule 600 ruling for an abuse of discretion, which is not merely an error of judgment, but rather, if the evidence of record establishes that in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, then the trial court abused its discretion.

**Rice**, 331 A.3d at 9 (quotation marks and citations omitted).

Pursuant to Rule 600, the Commonwealth must bring a defendant to trial within 365 days of filing the criminal complaint. **See** Pa.R.Crim.P. 600(A)(2).

> Where a defendant is not brought to trial within that 365-day period, a defendant may seek dismissal of the charges. [**See** Pa.R.Crim.P. 600(D)(1).] To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges.
>
> The first step in conducting a Rule 600 analysis is to calculate the "mechanical run date." The mechanical run date is the date by

---

[4] Robertson filed a second Rule 600 motion on May 1, 2024, in which he disputed the court's dismissal of his first Rule 600 motion. On May 2, 2024, the court held a second hearing and denied Robertson's second motion.

which the trial must commence under Rule 600. It is calculated by adding 365 days to the date on which the criminal complaint is filed. If a defendant is not brought to trial until after the mechanical run date, and files a Rule 600 motion to dismiss, the court must assess whether there is excludable time and/or excusable delay.

Rule 600(C) provides that "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excused from the computation." Pa.R.Crim.P. 600(C)(1). When delays are not caused by the Commonwealth, those periods of time, known as "excludable" periods, are added to the mechanical run date to produce the "adjusted run date." The adjusted run date provides the deadline for the Commonwealth to bring the defendant to trial under Rule 600.

*Commonwealth v. Brandt*, 337 A.3d 973, 979 (Pa. Super. 2025) (some quotation marks, brackets, case citations, and ellipses omitted). Notably, "[i]f the defendant's trial commences prior to the adjusted run date," our analysis "need go no further." *Commonwealth v. Mullen*, 341 A.3d 799, 808 (Pa. Super. 2025) (citation omitted).

> Excludable time includes, but is not limited to, delays caused by: 1) the suspension of Rule 600 during the COVID-19 pandemic, without regard to the Commonwealth's diligence; 2) defense unavailability or continuance requests; 3) the adjudication of a defendant's pretrial motion; 4) court congestion, judicial delay, or court transfer; and 5) the failure to bring a defendant to court from state custody[.]

*Commonwealth v. Robinson*, 339 A.3d 1030, 1035-36 (Pa. Super. 2025) (citations omitted).

> To determine whether delays are excludable from the Rule 600 calculation, the rule requires that the cause of the delay must first be determined before courts may consider whether the

- 14 -

Commonwealth acted with due diligence throughout the life of the case. It is only when the Commonwealth both caused the delay and lacked due diligence that the delay is properly included in the Rule 600 calculation.

Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth.

**Brandt**, 337 A.3d at 979-80 (citations, quotation marks, and brackets omitted).

In the case *sub judice*, the Commonwealth filed a criminal complaint against Robertson on February 27, 2020. Accordingly, the mechanical run date for the Commonwealth to bring Robertson to trial was February 26, 2021. **See** Pa.R.Crim.P. 600(A)(2)(a). Robertson was ultimately brought to trial on May 13, 2024, at which time a period of 1,537 days had passed since the filing of the criminal complaint. Accordingly, we must determine whether any periods of excludable time extended the mechanical run date.

First, due to the Covid-19 pandemic, statewide judicial emergency orders suspended Rule 600 time calculations from March 16, 2020 through June 1, 2020. **See In re: General Statewide Judicial Emergency**, 228 A.3d 1283 (Pa. Mar. 18, 2020); **In re: General Statewide Judicial Emergency**, 234 A.3d 408 (Pa. May 27, 2020). The President Judge of Delaware County further suspended Rule 600 through August 31, 2021. **See In re: Thirty-Second Judicial District – Sixth Emergency Order Extension – Criminal Section**, 7/2/21; **In re: Thirty-Second Judicial District – Vacating of the Criminal Section Emergency Operational and Scheduling Protocols**,

8/12/21.[5] Thus, a period of 533 days attributable to the Covid-19 judicial emergency is excludable from the Rule 600 calculation, pursuant to subsection (C)(1), as an "other period of delay." ***Commonwealth v. Lear***, 325 A.3d 552, 563 (Pa. 2024) (brackets and citation omitted).

Additionally, the trial court determined, and Robertson does not dispute, that "[t]here was a court scheduling delay of 223 days from May 30, 2023, to January 8, 2024, which was the earliest available trial date based on court calendars." Trial Court Opinion, 8/12/25, at 6 (citation omitted). This 223-day period of delay attributable to the court's scheduling delay is likewise excludable for purposes of Rule 600. ***See Robinson***, 339 A.3d at 1035-36.

Finally, there were significant periods of delay attributable to the defense's numerous requests to continue proceedings and postpone trial, totaling 548 days of excludable time.[6] ***See id.*** Robertson avers that "[t]he

_____

[5] ***See Commonwealth v. Zanchuck***, 348 A.3d 741, 2025 WL 2701798 at *11 (Pa. Super. filed Sept. 23, 2025) (unpublished memorandum) ("The vacation of the emergency operational and scheduling protocols in place during the local judicial emergency [in Delaware County] as appeared to mark the end of the local judicial emergency of August 31, 2021.") (unpublished memorandum); ***see also Commonwealth v. Westlake***, 295 A.3d 1281, 1287 (Pa. Super. 2023) ("We may cite to unpublished memorandum decisions of this Court filed after May 1, 2019, for their persuasive value[,]" pursuant to Pa.R.A.P. 126(b).) (citation omitted).

[6] Specifically, our review of the record reveals that the proceedings were continued over the following periods due to defense requests: July 28, 2021 to September 22, 2021; November 22, 2021 to March 7, 2022; April 11, 2022 to July 18, 2022; July 20, 2022 to December 19, 2022; and December 28, 2023 to May 13, 2024.

delay [from] January 8, 2024 to May 13, 2024 cannot be attributable to [him]" because the Commonwealth's "disclosure of unfavorable DNA evidence ... 26 days before [the] January 8, 2024 trial date had a direct impact on counsel's decision to seek a postponement of the trial date." Appellant's Brief, at 17, 18. Robertson contends that this period is not excludable for purposes of Rule 600 because "[t]he Commonwealth's failure to provide a sufficient reason for the delay in obtaining and turning over the DNA results demonstrates a lack of due diligence." *Id.* at 17. We disagree.

Robertson's argument is premised upon a fundamental misapprehension of time computations under Rule 600(C)(1). As this Court recently explained, "the causation analysis precedes the due diligence inquiry. This means that the trial court must first consider the cause of the delay before analyzing the Commonwealth's diligence in meeting discovery obligations over the life of the case." *Commonwealth v. Walker*, 331 A.3d 43, 48 (Pa. Super. 2025) (internal quotation marks and citations omitted). Here, the cause of the delay from January 8, 2024 to May 13, 2024 was the defense's request for a continuance. *See id.* Thus, contrary to Robertson's assertion, defense counsel's underlying reason for requesting the continuance is irrelevant, as "Rule 600 addresses the causes of, not the motives for, the delay." *Id.* at 49.

Adding all periods of excludable time to the mechanical run date of February 26, 2021, we arrive at an adjusted run date of September 23, 2024. *See Brandt*, 337 A.3d at 979. Robertson was brought to trial on May 13,

2024, well before his adjusted run date had passed, and a Rule 600 violation did not occur. As such, we need not proceed further to consider the Commonwealth's due diligence. *See Mullen*, 341 A.3d at 808. Therefore, we discern no abuse of discretion by the trial court in rejecting Robertson's Rule 600 challenge. *See Rice*, 331 A.3d at 9. Accordingly, Robertson's final issue does not merit relief.

Based on the foregoing, Robertson is not entitled to relief, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/9/2026