J-A18031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :            PENNSYLVANIA
  :
             v.   :
  :
  :
  :
KELLY DASHAWN LEWIS   :
  :
          Appellant   :   No. 336 WDA 2016

Appeal from the Judgment of Sentence January 28, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0007104-2015

BEFORE:  BOWES, LAZARUS and OTT, JJ.

MEMORANDUM BY OTT, J.:            **FILED AUGUST 09, 2018**

Kelly Dashawn Lewis appeals from the judgment of sentence entered on January 28, 2016, in the Allegheny County Court of Common Pleas, made final by the denial of post-sentence motions on February 8, 2016.  On November 6, 2015, a jury convicted Lewis of indecent assault and corruption of minors.[1] The court sentenced Lewis to a term of 15 to 36 months' incarceration, followed by five years' probation.  On appeal, Lewis raises *voir dire* and admissibility of evidence challenges.  After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm the judgment of sentence.

The trial court set forth the facts the case as follows:

---

[1] 18 Pa.C.S. §§ 3126(a)(7) and 6301(a)(1), respectively.

At trial, ten year old [T.J.], the victim in this case, testified that she last saw [Lewis], whom she calls "Uncle Kelly," on August 13, 2014, at her "Nana's" house for Nana's going away party. She was eight years old at the time. She played at Nana's house during the party, going in and out of the house frequently. At one point she found herself alone with [Lewis]. She walked into the house and [Lewis] was in the dining room by himself. He asked her to step into the kitchen. When they went into the kitchen, she sat on the vent and he stood in front of her, close to her. [The victim] testified that [Lewis] touched her in her "private area," which she uses to go to the bathroom. She clarified that he touched her vagina over her clothes. The incident lasted two or three seconds and then she pushed him away and ran outside. Before she left, [Lewis] told her not to tell anyone "because no one's going to believe you." [The victim] acted like nothing had happened and did not tell her mother until January 2015. At first, she did not disclose abuse at her forensic interview. Later in the` interview, [the victim] told the interviewer that the inappropriate touching did happen. [The victim] confirmed that her disclosure was true because it happened and not because someone told her it happened.

Next, Detective Rebecca Meder testified that she observed the forensic interview. Detective Meder testified that [the victim] initially denied that anyone touched her inappropriately but later in the interview stated [Lewis] touched her over her clothes in her private area. Video of the forensic interview was admitted.

[Lewis] called his grandmother, Cordova Long-Eberhardt, or "Nana" as she's better known to [the victim]. Long-Eberhardt testified that she was present for the entire party and never saw [Lewis] and [the victim] in the same room. Long-Everhardt could not confirm that [the victim] attended the party. [Lewis]'s aunt, Rosa Coleman, testified that she also did not see [the victim] anywhere near [Lewis] at the party. Coleman stated that she saw [the victim] at the party, but did not see her crying or upset at any point. James Long, [Lewis]'s uncle and godfather, testified similarly. Keaira Redmon, [Lewis]'s sister, echoed the testimony of Coleman and Long. She did not see [the victim] and [Lewis] together, and did not see [the victim] look upset or alarmed at the party. Redmon added that it was not possible that [Lewis] and [the victim] could have been in the kitchen by themselves because either Redmon or Long were in the kitchen at all times during the party. Kevin Fowler, [Lewis]'s cousin, also testified

- 2 -

that he was at this party and spent most of the party with [Lewis]. He also stated that he never saw [the victim] and [Lewis] together, and that he never saw [the victim] crying or upset.

Lastly, [Lewis] testified in his own defense. He testified that he did not recall seeing [the victim] at the party. He denied touching her inappropriately or even being alone with her. He testified that he has seven children whom he loves and with whom he has good relationships. On cross-examination, he admitted that he and the mother of two of his children started their relationship when he was twenty-two and she was sixteen.

Trial Court Opinion, 11/9/2016, at 3-4 (record citations omitted).

Lewis was arrested and charged with one count each of indecent assault (person less than 13 years of age), endangering the welfare of children ("EWOC"),[2] and corruption of minors. On November 6, 2015, the jury convicted Lewis of indecent assault and corruption of minors, but acquitted him of EWOC. On January 28, 2016, the court sentenced Lewis to a term of 15 to 36 months' imprisonment on the assault count, and a consecutive term of five years' probation on the corruption of minors offense. Lewis filed a post-sentence motion, which was denied on February 8, 2016. This timely appeal followed.[3]

---

[2] **See** 18 Pa.C.S. § 4304.

[3] On March 9, 2016, the trial court ordered Lewis to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After several extensions of time, Lewis filed a concise statement on August 1, 2016. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on November 9, 2016.

In his first argument, Lewis contends the trial court erred and/or abused its discretion "by permitting the Commonwealth to ask prospective jurors during *voir dire* examination the following question: 'Under Pennsylvania law, a victim's testimony standing alone, if believed by you, is sufficient proof to find the defendant guilty in a sexual assault case. Are you able to follow this principle of law?'" Lewis's Brief at 16. He states:

> This question was not designed to disclose the qualifications of a prospective juror to serve or to reveal whether the juror had formed a fixed opinion or otherwise may be subject to disqualification for cause. Quite to the contrary, the question clearly was designed to disclose what the prospective juror's present impressions or opinions might be or what the prospectively juror's attitude or decision likely would be under certain facts which were to be developed in the case. Moreover, because the question was in the nature of a jury instruction and concerned a legal principle, it was legally inappropriate.

*Id.*

> Furthermore, he asserts:
>
> The trial court utterly failed to consider, however, that a juror's honest answer to the Commonwealth's proposed question reveals nothing at all about that juror's ability to receive the evidence impartially and render an impartial verdict. Instead, a juror's honest answer to the Commonwealth's question would reveal only the quality and quantity of evidence that the prospective juror would either demand to hear or would expect to hear before voting to convict Mr. Lewis.
>
> …
>
> The only conceivable motivation for the Commonwealth to ask the proposed question would be to ascertain the effectiveness of her trial strategy and to pluck out jurors from the *venire* who would be sympathetic to the Commonwealth's position. At bottom, the question was designed to help the Commonwealth identify those "Commonwealth-friendly" jurors who would be

sympathetic (and, similarly, to weed out those "defense-friendly" jurors who would be unsympathetic) to the fact that the Commonwealth planned to present no evidence tending to prove Mr. Lewis's guilt other than [the victim]'s uncorroborated allegations. Thus, at its heart, the question was designed to provide a basis for the Commonwealth's exercise of peremptory challenges. These are precisely the type of inquiries that the case law disallows. Fundamentally, the question is merely the Commonwealth's oblique way of asking potential jurors, "Are you the kind of person who would convict the defendant even though we won't present very much evidence of his guilt?"

*Id.* at 24 (citation omitted and emphasis removed).

Additionally, Lewis alleges the question at issue "intrudes upon subject matter falling within the province of the court[,]" because it is "in the nature of a jury instruction." *Id.* at 26. Lewis states that consequently, the court erred because such a question goes against precedence. *Id.* Moreover, Lewis complains a part of the question, that "'a victim's testimony standing alone, if believed by the jury, is sufficient proof to find the defendant guilty in a sexual assault case' … is, at best, an incomplete statement of law, and, at worst, a complete misstatement of the law" because it should have included language, which indicated that each element of each charged offense needed to be proved beyond a reasonable doubt. *Id.* at 28-29.

Our standard of review is as follows:

It is well established that the scope of *voir dire* rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error. Similarly, the trial court possesses discretion to determine whether counsel may propose their own questions of potential jurors during *voir dire*.

*Commonwealth v. Mattison*, 82 A.3d 386, 397 (Pa. 2013) (citations omitted). Moreover,

> [a] criminal defendant's right to an impartial jury is explicitly granted by Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment of the United States Constitution. The jury selection process is crucial to the preservation of that right. *Commonwealth v. Ingber*, 516 Pa. 2, 6, 531 A.2d 1101, 1102 (1986). The purpose of *voir dire* is to provide an opportunity to counsel to assess the qualifications of the prospective jurors to serve. It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. *Commonwealth v. Drew*, 500 Pa. 585, 588, 459 A.2d 318, 320 (1983) (citing *Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973)). *See also Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967) *and Commonwealth v. McGrew*, 375 Pa. 518, 100 A.2d 467 (1953). It is well settled that the sole purpose of examination of jurors under *voir dire* is to secure a competent, fair, impartial and unprejudiced jury. While considerable latitude should be permitted on *voir dire*, the inquiry should be strictly confined to disclosing qualifications of a juror and whether the juror has formed a fixed opinion or may be otherwise subject to disqualification for cause. *Drew*, 500 Pa. at 589, 459 A.2d at 320 (citing *McGrew*, 375 Pa. at 524, 100 A.2d at 470).

*Commonwealth v. Ellison*, 902 A.2d 419, 423-424 (Pa. 2006). "Voir dire is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies." *Commonwealth v. Paolello*, 665 A.2d 439, 451 (Pa. 1995).

Turning to the present matter, prior to trial, the following discussion occurred between the parties and the court regarding the *voir dire* question at issue:

> [Defense counsel]: Yes, Your Honor. The Commonwealth did submit some proposed *voir dire* questions. I do particularly have an issue with the first question. It reads, "Under Pennsylvania

law, a victim's testimony standing alone, if believed by you, is sufficient proof to find the defendant guilty in a sexual assault case. Are you able to follow this principle of law?

First of all, the issue that I have is that in *voir dire*, I don't believe that it's appropriate to instruct jurors through the attorneys on what the law is. I think that the law should come from the judge. And they are instructed that they are the finders of fact, not of the law. And so that's the first issue that I have with the question.

Secondly, the second issue that I have is that this question does not leave room for the alternative. The jurors should be instructed that if you believe this is enough to find a person guilty beyond a reasonable doubt, or the alternative, if you don't believe this person, then it's enough to find the person not guilty and the Commonwealth has not met their burden, something to that effect. But I think this is a one-sided question and brings out biased jurors.

THE COURT: I always allow the question. It is an accurate statement of the law, and many of the questions that are asked during jury selection -- for example, "You are required to find the defendant guilty beyond a reasonable doubt" or that "The judge will instruct you that you cannot believe one witness just because he's a police officer over another."

There are lots of times in jury selection where we say "This is what the judge will instruct you. Can you follow that instruction?"

So I think it's a fair question. I always allow it.

N.T., 11/4/2015 – 11/6/2015, at 4-6.

In its Rule 1925(a) opinion, the trial court further explained its rationale:

This Court allowed the *voir dire* question as it is an accurate statement of the law and, based on prior experience in these types of cases, aid[s] in the selection of competent and fair jurors.

The singular purpose of *voir dire* examination is to secure a competent, fair, impartial and unprejudiced jury. In pursuit of that objective, the right of a litigant to inquire into bias

- 7 -

or any other subject which bear on the impartiality of a prospective juror has been generally recognized. Nevertheless, the scope of *voir dire* examination rests in the sound discretion of the trial judge and his decisions will not be reversed unless there is an abuse of that discretion.

***Commonwealth v. Futch***, 366 A.2d 246, 248 (Pa. 1976). The proposed question delves into the potential bias of a juror who may be unable to follow the law that, in a case like this one, a victim's testimony on its own, if believed, is sufficient to find a defendant guilty. As such, this Court did not abuse its discretion in permitting the question.

Trial Court Opinion, 11/9/2016, at 5.

Our standard of review regarding this matter is very deferential to the trial court, where the "opportunity to observe the demeanor of the prospective juror and the tenor of the juror's answers is indispensable to the judge in determining whether a fair trial can be had in the community." ***Commonwealth v. Bachert***, 453 A.2d 931, 937 (Pa. 1982).

We find a review of the record belies Lewis's assertions. The question proposed by the Commonwealth was not an abuse of discretion because this case hinged on what the victim said occurred at the party versus what Lewis said had transpired. The court acted within its discretion when it permitted a question designed to expose any fixed opinions of the jurors regarding the lack of physical evidence.[4] As such, the question was used "to secure a

_____

[4] We liken this credibility inquiry to similar questions set forth in Pennsylvania Rule of Criminal Procedure 632(H) ("8. Would you be more likely to believe the testimony of a police officer or any other law enforcement officer because of his or her job? 9. Would you be less likely to believe the testimony of a

- 8 -

competent, fair, impartial and unprejudiced jury." ***Ellison***, 902 A.2d at 423-424. Furthermore, it was not "used to ascertain the effectiveness of potential trial strategies." ***Paolello***, 665 A.2d at 451.

Lastly, to the extent Lewis compared the *voir dire* question to a jury instruction and alleged that it was improper, we note at the time the jury instructions were given, the court provided, without objection, the following relevant directives:

> In deciding which witnesses to believe, it is proper for you to consider whether or not other evidence in the case supports the testimony of each witness. You must recognize that it is entirely possible for a single witness to give truthful and accurate testimony and that this testimony may be believed even though a greater number of witnesses of apparent equal reliability contradict that witness.
>
> …
>
> The testimony of [the victim] standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in this case. The testimony of a victim in a case such as this need not be supported by other evidence to sustain a conviction. Thus, you may find the defendant guilty if the testimony of [the victim] convinces you beyond a reasonable doubt that the defendant is guilty.

N.T., 11/4/2016 – 11/6/2016, at 335-336, 341.

---

police officer or other law enforcement officer because of his or her job? 10. Would you have any problem following the court's instruction that the defendant in a criminal case is presumed to be innocent unless and until proven guilty beyond a reasonable doubt? 11. Would you have any problem following the court's instruction that the defendant in a criminal case does not have to take the stand or present evidence, and it cannot be held against the defendant if he or she elects to remain silent or present no evidence?").

We note "[t]he law presumes the jury will follow the instructions of the court." **Commonwealth v. Drumheller**, 808 A.2d 893, 906 (Pa. 2002) (citations omitted); **see also Commonwealth v. Eichinger**, 108 A.3d 821, 846 (Pa. 2014). The instructions provided herein were more than adequate and Lewis did not raise any argument with respect to them; therefore, we can presume the jury correctly followed them. Accordingly, we conclude the trial court did not commit "palpable error" with regard to its decisions during the *voir dire* process. **See Mattison**, 82 A.3d at 397.

In Lewis's second argument, he asserts the trial court abused its discretion by permitting the Commonwealth to cross-examine him "about the fact that the mother of two of his children, [Sadae] Young, was 16 years old at the time her relationship with Mr. Lewis began." Lewis's Brief at 34.

By way of background, Lewis testified in his own defense. On direct examination, Lewis denied "inappropriately handl[ing]" the victim and stated he was never alone with her. N.T., 11/4/2015 – 11/6/2015, at 243. The following exchange then occurred:

Q. Now, the way that you would treat your own kids, is that the way that you would treat other individuals that come to your home?

A. Yes, ma'am.

Q. And would you ever have any issue with anybody inappropriately touching one of your children?

A. Yes, ma'am.

Q. And why is that? How would you react?

A. It cannot be explained, ma'am. I actually would not know the reaction.

Q. And that hasn't happened, but can you even think about that happening?

A. I don't even want to imagine, ma'am.

Q. And do you have any objection to men touching little children?

A. Yes, ma'am.

Q. Now, you learned about the allegations at some point in time later after the fact?

A. Yes, ma'am.

Q. And once you learned about those allegations, what did you do? How did you feel?

A. I feel torn apart. Like, I feel angry, sad. At first, like, how can somebody think that I touched their child? And then, like, just embarrassed. Just the fact of being accused of something like that can tear you apart. It's hard to explain.

*Id.* at 247-248.

Subsequently, on cross-examination, the Commonwealth asked Lewis about the ages of two of his children and the age of their mother, Young. *Id.* at 249. Defense counsel objected and the following exchanged occurred:

[Defense counsel]: I believe that the Commonwealth is trying to allude to the fact that the child that she's referring to with [Young] was born at a time where [Young] was under 18 and my client was above the age of 18.[5] I would submit that that type of testimony is not relevant because it shows a sexual deviance, and that's what the Commonwealth is trying to establish, the nature of that question.

---

[5] Lewis was approximately 22 years old at the time. *Id.* at 253.

- 11 -

It's not relevant to whether or not in this particular situation he indecently assaulted, corrupted the morals of minors, or any of the amendments of the charges here.

[The Commonwealth]: I believe it goes towards his credibility. Does he know her name? How old is she? He said that he has a very good relationship with his children, and I just want to explore what he does to take care of his children.

Is he only talking about the two children that he has with her? Because I believe she's the one that lives with them.

[Defense counsel]: How does that go towards his credibility?

[The Commonwealth]: The questions on direct examination were about if he was a good father, what he does with his children, if he would be upset if someone would do something to a young person …

THE COURT: I think it is relevant on cross-examination to explore his family dynamic that you got into on direct with him. You did ask him questions that related to his relationship with his children and --

[Defense counsel]: I have no problem with that, Your Honor. My issue is going into the ages. I don't know the ages of the children. That was asked on cross-examination. Going into the specific ages of the children and then going into the ages in which they were born with their respective mothers has nothing to do with the elements of the charges here.

THE COURT: It doesn't have to do with the elements. I think it does have to do with his credibility with regard to his own description of his disgust …. He said torn apart, embarrassed. I do think it is relevant cross-examination. I'll allow it.

[Defense counsel]: For purposes of character?

THE COURT: Not for the purposes of character. Cross-examination with regard to the statements he made about whether he would, in fact, have been embarrassed or torn apart by allegations made against him.

[Defense counsel]:  That is beyond the scope of direct.

THE COURT:  No, that is the direct.  You asked those questions on direct.

[Defense counsel]:  Being embarrassed has nothing to do with the age in which your children were born legally.

THE COURT:  Not the age the children were born.  The age that he began a relationship with the mother of those children.  That is relevant.  Relevance is a broad spectrum.  I do think it is relevant.

*Id.* at 249-252.

Lewis argues:

The Commonwealth's request for the admission of this evidence was nothing more than a poorly disguised attempt to dance out in front of the jury past conduct by Mr. Lewis that, although far from illegal, the Commonwealth deemed to be morally reprehensible, and for the sole purpose of demonstrating that Mr. Lewis acted in accordance with that character toward [the victim].  In other words, by admitting information that Mr. Lewis impregnated a 16-year-old, the Commonwealth sought to prove Mr. Lewis's character trait of sexual deviance towards minors, and for the sole purpose of showing that he acted in a similarly sexually deviant manner toward [the victim].  Aside from being completely irrelevant, this is a textbook example of the type of "propensity evidence" that Pa.R.E. 404(b) prohibits.  The trial court committed a palpable abuse of discretion in ruling otherwise, such that Mr. Lewis is entitled to a new trial.

Lewis's Brief at 34.  Moreover, he states:

[E]vidence of Young's age at the time her relationship with Mr. Lewis began was not relevant to the credibility of Mr. Lewis's assertion on direct examination that he loves his children, cares for them, and believes himself to be a good father.  It is likewise not relevant to establish any element of any offense charged – each of which related to the alleged inappropriate touching of an eight-year-old child.  In other words, evidence that Mr. Lewis had a consensual sexual relationship with a 16-year-old when he was 21 or 22 has no tendency to make it more or less probable that

- 13 -

he inappropriately touched [the victim] than it would be without the evidence. The trial court acknowledged as much at sidebar conference at the time of trial counsel's objection to the challenged evidence. Likewise, Young's age is not in any way relevant to the credibility of Mr. Lewis's denial of the accusations lodged against him by [the victim].

…

In order for Young's age to be in any way relevant to the instant matter – especially to "call[] into question the credibility of [Mr. Lewis's] denial" of [the victim]'s allegations – this Honorable Court would be required to accept the proposition that evidence that Mr. Lewis engaged in perfectly legal sexual intercourse with 16-year-old Young has a tendency to make it more probable that he molested a prepubescent child, [the victim], than it would be without the evidence. In other words, this Honorable Court would have to accept that the proposition that an individual who engages in sexual contact with a person who has the legal capacity to consent makes it more likely that that same individual would engage in sexual contact with a person who lacks the legal capacity to consent.

*Id.* at 40-41, 42 (footnote omitted; emphasis removed).

"The admissibility of evidence is a matter directed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused that discretion." ***Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa. Super. 2013) (citation omitted). Moreover, evidence is relevant: "(a) if it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Loughnane***,

128 A.3d 806, 818 (Pa. Super. 2015) (citation omitted), *appeal granted in part*, 158 A.3d 1224 (Pa. 2016).  This Court has previously stated:

> Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
>
> Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case.  As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged.

*Commonwealth v. Broaster*, 863 A.2d 588, 592 (Pa. Super. 2004) (quotation marks, footnote, and citations omitted), *appeal denied*, 876 A.2d 392 (Pa. 2005).

Lastly, Pennsylvania Rule of Evidence 404(b) governs the admissibility of evidence of other bad acts.  *See* Pa.R.E. 404(b).

> Generally, evidence of [other] bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those [other] acts or to show criminal propensity. However, evidence of [other] bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.  In determining whether evidence of other ... bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.
>
> The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is

accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts.

***Commonwealth v. Ross***, 57 A.3d 85, 98-99 (Pa. Super. 2012) (*en banc*)

(citations omitted).

Here, the court found the following:

> On direct examination, [Lewis] testified that the accusations made against him caused him to feel embarrassed and torn apart. This Court ruled that cross-examination with regard to that statement was relevant and appropriate in that his fathering a child to a minor calls into question the credibility of his denial. Since [Lewis] raised the issue on direct examination, it was not beyond the scope of direct to inquire further on the matter. Moreover, evidence of [Lewis] fathering a child with a minor was not offered as evidence of poor character, rather it was offered specifically to cross-examine [Lewis] regarding his statement that he was embarrassed and torn up about having been accused of sexual abuse of a child.

Trial Court Opinion, 11/9/2016, at 7.

We agree with the trial court. The Commonwealth's question was used for the limited purpose of rebutting Lewis's own statement (and defensive strategy) that it was abhorrent for an older person to touch a minor person. Lewis had "opened the door" to this line of inquiry when he answered questions related to his relationship with his children and the possibility of them being touched by an older person.[6] As such, we conclude the rebuttal evidence was relevant and was not used solely to establish Lewis showed

---

[6] Furthermore, it merits mention that in his appeal, Lewis attempts to minimize the fact he was significantly older than Young and that they did have a relationship while she was a minor.

- 16 -

criminal propensity towards assaulting minors. ***See Broaster***, ***supra***; ***see Ross***, ***supra***.

Additionally, as the Commonwealth suggests, if there was such an error in admitting this testimony, it was harmless.[7]

> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Burno***, 154 A.3d 764, 787 (Pa. 2017), *quoting* ***Commonwealth v. Simmons***, 662 A.2d 621, 633 (Pa. 1995). The first prong of the harmless error test would apply here – that the evidence of Lewis's relationship with Young was *de minimis* in comparison to the overwhelming credibility evidence he introduced in the form of family members who testified that they never saw Lewis near the victim at the party in question or observed that the victim was upset at any point. ***See*** N.T., 11/4/2015 – 11/6/2015, at 140-235 (testimony of Long-Everhardt, Coleman, Long, Redmon, Fowler). Lewis also testified he had a romantic relationship with Young, but terminated it once he discovered her age. ***Id.*** at 252-254. Moreover, he acknowledged Young lived with him at the time of the trial. ***Id.*** Accordingly, the trial court

---

[7] ***See*** Commonwealth's Brief at 19-20.

did not abuse its discretion by sustaining these inquiries during Detective Gonzalez's testimony. Consequently, this evidentiary issue fails.

Judgment of sentence affirmed.

Judge Lazarus joins this memorandum.

Judge Bowes files a concurring and dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/9/2018